Michael G. SCHROYER; Gail R. Schroyer, Plaintiffs–Appellants,

v.

Kenneth P. FRANKEL; Gerald M. Smith Company, L.P.A., d/b/a Smith & Smith, Defendants–Appellees.

No. 98–4114.

United States Court of Appeals, Sixth Circuit.

Submitted Sept. 24, 1999.

Decided Dec. 2, 1999.

---

1. *See O'Neill, et al. v. State of Louisiana, et al.,* 61 F.Supp.2d 485 (E.D.La.1998).

Keith M. Herbers (briefed), Middleburg Heights, Ohio, for Appellants.

Kenneth P. Frankel, Timothy T. Smith (briefed), Smith & Smith, Avon Lake, Ohio, for Appellees.

Before: MERRITT and CLAY, Circuit Judges; WISEMAN, District Judge.[*]

CLAY, Circuit Judge.

Plaintiffs Michael G. Schroyer and Gail R. Schroyer appeal an order entered by the district court on August 18, 1998, entering judgment after a trial in favor of Defendants Kenneth P. Frankel and Gerald M. Smith Co., L.P.A., in this case alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), and the Ohio Consumer Sales Practices Act, Ohio Rev.Code § 1345.01 et seq. ("OCSPA"). For the reasons set forth below, we **AFFIRM**.

## I.

Plaintiff Gail Schroyer ("Gail"), owned and lived in a home in Elyria, Ohio, with her son, Plaintiff Michael Schroyer ("Michael"). In June of 1996, Gail discovered a leak in her water line, and contacted Michael Williams of Alexander's Sewer & Plumbing Company ("ASAP") for repairs. ASAP workers arrived at the Schroyer residence later that month to repair the leak. Because Gail was away, Michael signed the ASAP contract on her behalf. After ASAP finished installing a new water line, Gail, who had returned by the time the work was finished, wrote a check to ASAP for the contract price of $1,004.60, which covered a charge of $950.00 plus tax. Afterwards, Gail discovered damage to her new vinyl floor covering and to the sidewalk. Additionally, a city inspector found that ASAP had done the job improperly, and ordered ASAP to dig up the water line and place it deeper. Based on this, Gail stopped payment on the check to ASAP.

In accordance with the city inspector's instructions, ASAP installed a new water line at the Schroyer residence. After it completed this work, ASAP left a second invoice for Gail in the amount of $1,954.60, representing the unpaid balance of $1,004.60, a charge of $50 for the stop payment order on Gail's check, and an additional charge of $900 for labor, materials, and equipment costs relating to work performed on the second visit. When Gail refused to pay the second invoice, Williams, proceeding *pro se* on behalf of ASAP, filed a small claims petition seeking $1,954.60 in damages in Elyria Municipal Court. Gail retained an attorney who filed a motion to transfer the small claims petition to the regular docket of the Elyria Municipal Court. Williams retained Defendant Kenneth Frankel, an attorney who has practiced law for twenty-two years and who is employed by Defendant Gerald M. Smith Co., L.P.A., a professional corporation engaged in the practice of law under the fictitious name of "Smith & Smith." In the fall of 1996, Frankel obtained an order dismissing Williams' complaint without prejudice.

Defendants filed suit in the Elyria Municipal Court on behalf of ASAP against Michael, and amended their complaint to

[*] The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

add Gail as a defendant. This complaint sought damages in the amount of $1,954.60 for breach of contract or, in the alternative, unjust enrichment. Michael filed an answer raising various defenses but alleging no violations of the OCSPA. Gail filed an answer and a counterclaim, raising various defenses and alleging violations of the OCSPA. The Elyria Municipal Court granted judgment in favor of ASAP and against Gail in the amount of $1,054.00 and on the counterclaim. The court granted judgment in favor of Michael and against ASAP on the grounds that he had merely acted as an agent for Gail.

During the municipal court litigation, Michael and Gail filed separate suits against Defendants in the United States District Court; these complaints alleged numerous violations of the FDCPA and the OCSPA. The district court consolidated the cases. Plaintiffs filed a motion for partial summary judgment, but the district court denied the motion for partial summary judgment on the grounds that there was a genuine issue of material fact as to whether Defendants were "debt collectors" under the FDCPA. After a bench trial, the district court ruled in favor of Defendants and dismissed Plaintiffs' claims.

In doing so, the district court found that Smith & Smith handled fifty to seventy-five debt collection cases annually, that debt collection comprised less than two percent of the firm's overall practice, and that the firm did not hire any paralegals or other non-attorneys nor use any computer programs for debt collection purposes. The district court further found that Frankel handled 389 cases in one year, that twenty-nine, or 7.4%, of these cases were debt collection cases, and that his debt collection cases came from business clients he represented in matters not involving debt collection. The district court further noted the absence of evidence that Defendants handled debt collection for a major client on an ongoing basis, and the absence of evidence as to the total fees collected by Defendants in debt collection cases. On the basis of these findings, the district court determined that Defendants were neither "debt collectors" under the FDCPA or "suppliers" under the OCSPA, and concluded that defensive collateral estoppel partially precluded Gail's claims. Plaintiffs filed timely notice of appeal to this Court.

## II.

We review legal conclusions of the district court *de novo*, see *Kuper v. Iovenko*, 66 F.3d 1447, 1453 (6th Cir.1995), but review the factual findings of a district court following a bench trial for clear error. *See American Postal Workers Union v. United States Postal Serv.*, 871 F.2d 556, 561 (6th Cir.1989). When factual findings rest upon credibility determinations, this Court affords great deference to the findings of the district court. *See Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1067 (6th Cir.1994).

The FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e (1994). The statute defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (1994). Construing these provisions, the Supreme Court has held that attorneys can qualify as "debt collectors" under the FDCPA, and held that FDCPA requirements apply to "attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 298, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). This Court has acknowledged that the FDCPA can apply to attorneys who file lawsuits on behalf of clients to collect debts allegedly owed by consumers, *see Wadlington v. Credit Acceptance Corp.*, 76

F.3d 103, 106 (6th Cir.1996), but it has not fully analyzed what constitutes "regularly" collecting or attempting to collect debts in the context of an attorney or law firm. In ruling against Plaintiffs, the district court found that Defendants were not "debt collectors" under the FDCPA because Plaintiffs failed to meet their burden of proving that Defendants "regularly" engage in debt collection activities. We apply traditional principles of statutory construction to determine that the district court ruled correctly in this matter.

When interpreting the FDCPA, we begin with the language of the statute itself, *see Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980), since the intent of Congress is "best determined by the statutory language it chooses." *Sedima, S.P.R.L. v. Imrex,* 473 U.S. 479, 495 n. 13, 105 S.Ct. 3275 (1985). In so doing, this Court must consider the language and design of the statute as a whole as well as the specific provision at issue. *See K–Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988). The term "regularly" means "[a]t fixed and certain intervals, regular in point of time. In accordance with some consistent or periodical rule of practice." Black's Law Dictionary 1286 (6th ed.1990). The term "regular" means "[u]sual, customary, normal or general.... Antonym of 'casual' or 'occasional.'" *Id.* at 1285. These definitions suggest that an individual or entity must have more than an "occasional" involvement with debt collection activities to qualify as a "debt collector" under the FDCPA. *See Mertes v. Devitt,* 734 F.Supp. 872, 874–75 (W.D.Wis.1990); *see also Nance v. Petty, Livingston, Dawson & Devening,* 881 F.Supp. 223, 225 (W.D.Va.1994).

Furthermore, considering § 1692a(6) as a whole, it is clear that Congress intended the "principal purpose" prong to differ from the "regularly" prong of its definition of "debt collector." *See Garrett v. Derbes,* 110 F.3d 317, 318 (5th Cir.1997) (per curiam). Thus, one "may regularly render debt collection services, even if these services are not a principal purpose of his business." *Id.* As another court has explained, "the word 'regular' is not synonymous with the word 'substantial.' Debt collection services may be rendered 'regularly' even though these services may amount to a small fraction of the firm's total activity." *Stojanovski v. Strobl & Manoogian, P.C.,* 783 F.Supp. 319, 322 (E.D.Mich.1992). Under this interpretation of "regular" or "regularly," an attorney may be a "debt collector" under the FDCPA even when the ratio of his debt collection efforts to other legal efforts is small. *Id.*

Ordinary interpretations of the words "regular" and "regularly" fail to delineate the amount of debt collection activity required for this Court to find an attorney a "debt collector" under the FDCPA. *See White v. Simonson & Cohen, P.C.,* 23 F.Supp.2d 273, 278 (E.D.N.Y.1998). When the language of a provision is ambiguous, we look to the legislative history of the statute in question to ascertain its confines. *See Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). In its enactment of the FDCPA, Congress intended that "[t]he requirement that debt collection be done 'regularly' would exclude a person who collects a debt for another in an isolated instance, but would include those who collect for others in the regular course of business." S.Rep. No. 95–382, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1697–98. Assuming "that attorneys were only incidentally involved in debt collection activities," H.R.Rep. No. 99–405, *reprinted in* 1986 U.S.C.C.A.N. 1752, 1759, Congress originally retained in the statute an exception for attorneys collecting debts on behalf of clients. *See* Fair Debt Collection Practices Act of 1977, Pub.L. No. 95–109, § 803, 91 Stat. 874 (1977).

In the years that followed, Congress discovered that more attorneys were engaging in debt collection practices than non-attorneys. *See* H.R.Rep. No. 99–405,

*reprinted in* 1986 U.S.C.C.A.N. 1752, 1752 (observing that by 1985, 5,000 attorneys were engaged in the debt collection industry, as compared to 4,500 lay debt collection firms). Congress also learned that many attorneys advertised their exemption from the FDCPA to solicit creditors. *See* H.R.Rep. No. 99–405, *reprinted in* 1986 U.S.C.C.A.N. 1752, 1756. In response to these findings, Congress repealed the attorney exemption in 1986. *See* Fair Debt Collection Practices Act Amendment, Pub.L. No. 99–361, 100 Stat. 768 (1986). This repeal changed the FDCPA so that "any attorney who is in the business of collecting debts will be regarded by the Act as a debt collector." H.R.Rep. No. 99–405, *reprinted in* 1986 U.S.C.C.A.N. 1752, 1753.

Plaintiffs argue that in revoking the attorney exemption, Congress intended for the FDCPA to apply to any attorney who collects debts in the regular course of business, even if he does so as an incidental part of his regular practice of law. To support this assertion, Plaintiffs cite *Crossley v. Lieberman,* which notes the following analysis of Congress' intent:

> Both the legislative history of this amendment and the case law regarding similar provisions in the Federal Consumer Credit Protection Act demonstrates [sic] that any attorney who engages in collection activities more than a handful of times per year must comply with the FDCPA. Both sides in the floor debate conceded that the amendment would make the act apply not only to those lawyers who have collection practices but also to those who collect on

an occasional basis and the small law firm which collects debts incidentally to the general practice of law.

868 F.2d 566, 569 (3d Cir.1989) (quoting R. Hobbs, *Attorneys Must Now Comply With Fair Debt Collection Law,* Pa. J.L. Rptr., Nov. 21, 1987, at 3). While the commentary cited in *Crossley* bolsters Plaintiffs' position, we find it unpersuasive.

As a preliminary matter, we observe that the question of whether the defendant "regularly" collected debts was not actually before the *Crossley* court.[1] *See White,* 23 F.Supp.2d at 277. Setting that aside, the legislative history hardly makes clear that attorneys who collect debts occasionally and small firms that collect debts incidentally to their general law practices are "debt collectors" under the FDCPA.[2] The House Report accompanying the 1986 amendment to the FDCPA explained that Congress revoked the attorney exemption because its assumption that attorneys were only incidentally involved in debt collection no longer rang true, stating: "[i]n recent years, a large number of law firms have gone into specialized debt collection, and many of these firms use persons full time to collect debts. Repeal of the exemption will require these firms to comply with the same standards of conduct as lay debt collection firms." H.R.Rep. No. 99–405, *reprinted in* 1986 U.S.C.C.A.N. 1752, 1759. Elsewhere the House Report expresses its concern about the entry of attorneys into the "debt collection industry," and "the proliferation of attorney debt-collection firms." *Id.* at 1754, 1756. Moreover, the House Report repeatedly

---

[1]. The attorney in *Crossley* had initiated over one hundred debt related actions in the preceding eighteen months, and had ongoing relationships with four creditors for whom he collected debts. *See* 868 F.2d at 570 n. 2. By his own testimony, the attorney conducted debt collection activities as a "principal part" of his business. *See id.* at 570. Thus, the defendant in *Crossley* was a "debt collector" by virtue of the "principal purpose" and not the "regularly" prong of § 1692a(6).

[2]. Rather, the commentator appears to have drawn this conclusion from the statement of dissenting views offered by Representative Hiler, who observed that "much collection activity undertaken by attorneys is still performed incidentally to the provision of professional legal services," and feared that "the small firm which collects debts incidentally to the general practice of law would be hit particularly hard by the application of the FDCPA to attorneys." H.R.Rep. No. 99–405, *reprinted in* 1986 U.S.C.C.A.N. 1752, 1760.

identifies attorneys "in the business of" collecting debts as the target of its legislation.[3] *See id.* at 1753, 1754.

Drawing from this legislative history, we believe it reveals that for a court to find that an attorney or law firm "regularly" collects debts for purposes of the FDCPA, a plaintiff must show that the attorney or law firm collects debts as a matter of course for its clients or for some clients, or collects debts as a substantial, but not principal, part of his or its general law practice. Such an interpretation actuates the apparent purpose of Congress in creating attorney liability under the FDCPA: "[w]hile attorneys who are considered competitors of traditional debt collection companies should be covered under the Act, a firm whose debt collection activity does not approximate that of a traditional collection agency should not be suable under the act." *White*, 23 F.Supp.2d at 276. In identifying such attorneys, other courts have relied upon a variety of factors, including the volume of the attorney's collection activities, the frequent use of a particular debt collection document or letter, and whether there exists a steady relationship between the attorney and the collection agency or creditor he represented. *See, e.g., Cacace v. Lucas*, 775 F.Supp. 502, 504 (D.Conn.1990). Courts have considered what portion of the overall caseload debt collection cases constitute, and what percentage of revenues derive from debt collection activities. *See, e.g., Von Schmidt v. Kratter*, 9 F.Supp.2d 100, 102 (D.Conn.1997); *Nance*, 881 F.Supp. at 224. Some have maintained that even where debt collection takes up a minor portion of

a law practice, "debt collector" liability may lie where the defendant has an "ongoing relationship" with a client whose activities substantially involve debt collection. *See Stojanovski*, 783 F.Supp. at 322.

■ Applying these principles to the undisputed factual findings in this case, we believe Plaintiffs failed to prove that Defendants "regularly" collect debts so as to constitute "debt collectors" under the FDCPA. The district court found that only two percent of Smith & Smith's overall practices consisted of debt collection cases, and that the firm did not employ individuals full-time for the purpose of collecting debts. The district court further found that only 7.4%, 29 of 389 cases annually, of Frankel's overall practice consisted of debt collection cases, and that in the majority of his debt collection cases, he represented debtors—implying that Frankel was not competing with lay debt collectors.[4] Moreover, the district court found that Frankel represented a number of business clients who were the source of his twenty-nine debt collection cases.

Finally, the court observed that Plaintiffs failed to offer evidence showing that fees generated or collected by Smith & Smith or Frankel from debt collection activities constituted a great portion of overall revenues, and failed to offer proof that Smith & Smith or Frankel handled debt collection cases as part of an ongoing relationship with a major creditor or business client with substantial debts for collection. While these facts do support the inference that it was not unusual for Defendants to perform debt collection work, or that their

**3.** The phrase "regular course of business" refers to a regular occupation in which a person is engaged "with view of winning livelihood or some gain, excluding incidental or occasional operations arising out of transaction of that business...." Black's Law Dictionary 1285 (6th ed.1990).

**4.** This factor relates to the emphasis in the House Report on attorneys whose debt collection activities rendered them competitors to lay debt collectors. Indeed, one court found that a firm whose principal business was the

transmission of telegrams "regularly" collected debts under the FDCPA because its debt collection services were well-publicized, and the firm advertised these services to attract customers. *See Romine v. Diversified Collection Servs., Inc.*, 155 F.3d 1142, 1146 (9th Cir.1998) (deeming Western Union a "debt collector" under the FDCPA). Here, there is no evidence that Frankel or Smith & Smith marketed their debt collection services to the general public.

debt collection work occurred in more than an isolated instance, we believe it does not support a claim that Defendants were "in the business" of debt collection, that they were in the "debt collection" industry, or that Smith & Smith was a "debt collection firm." Rather, the facts establish that Defendants' debt collection activities were incidental to, and not relied upon or anticipated in, their practice of law, and that therefore they should not be held liable as "debt collectors" under the FDCPA. Accordingly, we hold that the district court did not err in ruling in Defendants' favor and in dismissing Plaintiffs' FDCPA claims against Defendants.

### III.

The OCSPA provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." Ohio Rev.Code § 1345.02(A) (Banks–Baldwin 1994). The statute further defines a "consumer transaction" to include a transfer of a service "to an individual for purposes that are primarily personal, family, or household," Ohio Rev.Code § 1345.01(A) (Banks–Baldwin 1994), and a "supplier" to include any "person engaged in the business of effecting or soliciting consumer transactions, whether or not he deals directly with the consumer." Ohio Rev.Code § 1345.01(B) (Banks–Baldwin 1994). Ohio courts have read these provisions to hold that the collection of debts associated with consumer transactions, including those involving repairs to realty, falls within the purview of the OCSPA because such debt collection covers acts that occur before, during, or after the transaction. *See Broadnax v. Greene Credit Serv.*, 118 Ohio App.3d 881, 694 N.E.2d 167, 174 (1997); *Celebrezze v. United Research, Inc.*, 19 Ohio App.3d 49, 482 N.E.2d 1260, 1262 (1984); *see also Keiber v. Spicer Constr. Co.*, 85 Ohio App.3d 391, 619 N.E.2d 1105, 1109 (1993).

■ While the definition of "supplier" under the OCSPA is substantially broader than the definition of "debt collector" under the FDCPA, the requirements of the statutes are similar in that to prove that an attorney was "engaged in the business of effecting or soliciting consumer transactions" under the OCSPA, a plaintiff must show "more than one isolated occurrence, especially when the occurrence is not within the usual course of business. The phrase has generally been held to mean continuous or regular activity, not a single isolated occurrence." *Renner v. Derin Acquisition Corp.*, 111 Ohio App.3d 326, 676 N.E.2d 151, 159 (1996) (citing *Moore v. Florida Bank of Commerce*, 654 F.Supp. 38, 41 (S.D.Ohio 1986), *aff'd*, 833 F.2d 1013 (6th Cir.1987) (unpublished)). *Renner* suggests that to determine whether an attorney is a "supplier" under the OCSPA, a court must consider specifically the regularity with which the attorney engages in the type of transaction attacked by the plaintiff, and not the entire gamut of transactions in which the attorney participates. 676 N.E.2d at 159 (finding that attorney who sent a letter demanding payment on behalf of her client was not a "supplier" given lack of proof that she sent such letters in the regular course of business); *see also Lewis v. ACB Bus. Servs.*, Inc., 135 F.3d 389, 412 (6th Cir.1998) (finding that attorney was not a "supplier" due to absence of proof that he regularly and deliberately filed collection suits in improper jurisdiction).

■ Thus, to determine whether Defendants are "suppliers" under the OCSPA, this Court must ask essentially the same question that it must ask to determine whether Defendants are "debt collectors" under the FDCPA: Did debt collection activities fall within Defendants' regular and usual course of business so that they were "engaged in the business of" debt collection? As discussed above, the undisputed facts of this case suggest that Defendants could not fairly be said to engage "in the business of" debt collection in

that their debt collection activities appear to be incidental to their practice of law. Significantly, in support of their claim that Defendants are "suppliers" under the OCSPA, Plaintiffs merely repeat their arguments as to why Defendants are "debt collectors" under the FDCPA and offer nothing more. Accordingly, we hold that the district court properly dismissed Plaintiffs' OCSPA claims against Defendants.

## IV.

 When applying the doctrine of collateral estoppel, federal courts must adopt the same doctrine of collateral estoppel as the state in which the earlier judgment was rendered. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 85, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). In *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 443 N.E.2d 978, 987 (1983), the Ohio Supreme Court adopted a requirement of mutuality in the application of collateral estoppel as a general proposition, but realized "that there may well be other cases in which there are presented additional exceptions." This Court later interpreted *Goodson* to hold that while Ohio law does not insist on mutuality in defensive collateral estoppel cases, "Ohio law does insist on 'a fair opportunity to fully litigate' the issue." *McAdoo v. Dallas Corp.*, 932 F.2d 522, 525 (6th Cir.1991). In this case, the district court held that the doctrine of defensive, non-mutual collateral estoppel barred Gail Schroyer from arguing that she did or does not owe ASAP any money, as the Elyria Municipal Court concluded otherwise, ruling in favor of ASAP and entering judgment against her. Although Gail challenges this legal conclusion on appeal, her attack is utterly without merit.

 As a preliminary matter, we believe the issue of whether the district court properly applied defensive collateral estoppel to this case is moot, as the district court otherwise properly determined that Plaintiffs could not hold Defendants liable as "suppliers" or "debt collectors" under the OCSPA and the FDCPA. Additionally, we note that the FDCPA holds "debt collectors liable for various 'abusive, deceptive, and unfair debt collection practices' regardless of whether the debt is valid." *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir.1992) (quoting 15 U.S.C. § 1692a); *see also Azar v. Hayter*, 874 F.Supp. 1314, 1317 (N.D.Fla.), aff'd, 66 F.3d 342 (11th Cir.1995) (holding that FDCPA claims have "nothing to do with whether the underlying debt is valid" and instead concern "the method of collecting the debt"). Thus, even if defensive collateral estoppel did not apply to this claim, Gail's claim that the debt was invalid is irrelevant to the merits of her FDCPA claim. Finally, Gail does not argue that the proceedings in Elyria Municipal Court did not afford her a full and fair opportunity to litigate her claim that she owed ASAP nothing—rather, it appears that Gail received adequate opportunity there to challenge her liability to ASAP. Consequently, we believe the district court did not err in precluding Gail from relitigating this claim in federal court.

For these reasons, we **AFFIRM** the judgment of the district court.