87 P.3d 883

KEAUHOU MASTER HOMEOWNERS ASSOCIATION, INC., a Hawai'i non-profit corporation; William S. Taylor, as an individual, a trustee of the William S. Taylor Trust and as a representative of a class of taxpayers and homeowners residing in Keauhou, Hawai'i; and Walter Kriewald, as an individual and as a representative of a class of homeowners residing in Keauhou, Hawai'i, Plaintiffs–Appellants,

v.

COUNTY OF HAWAI'I, a municipal corporation, Harry Kim,[1] in his capacity as a Mayor, Ronald K. Takahashi,[2] in his capacity as Deputy Director of Public Works, Bruce McClure,[3] in his capacity as Director of Public Works, Kamehameha Schools/Bernice Pauahi Bishop Estate, a Hawai'i non-profit trust organization, Lokelani Lindsey, Henry Peters, Oswald Stender, Richard Wong and Gerard A. Jervis as Trustees of the Bernice Pauahi Bishop Estate, Kamehameha Investment Corporation, a Hawai'i corporation, and Watanabe, Ing & Kawashima, a Hawai'i partnership, Defendants–Appellees.

No. 23520.

Supreme Court of Hawai'i.

April 8, 2004.

Francis L. Jung, Kailua Kona, (of Jung & Vassar), for the plaintiffs-appellants Keauhou Master Homeowners Association, Inc., et al.

James E. Duffy, Honolulu, (of Fujiyama, Duffy & Fujiyama), for the defendants-appellees Watanabe, Ing & Kawashima.

MOON, C.J., LEVINSON, NAKAYAMA, and ACOBA, JJ., and Circuit Judge McKENNA, in Place of DUFFY, J., recused.

---

1. Pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 43(c)(1) (2000), Harry Kim is substituted for Stephen Yamashiro, the former Mayor of the County of Hawai'i.

2. Pursuant to HRAP Rule 43(c)(1) (2000), Ronald K. Takahashi is substituted for Riley W. Smith, the former Deputy Director of Public Works of the County of Hawai'i.

3. Pursuant to HRAP Rule 43(c)(1) (2000), Bruce McClure is substituted for Harold Sugiyama, the former Hawai'i County Chief Engineer. The County of Hawai'i currently refers to its "Chief Engineer" as "Director of Public Works."

Opinion of the Court by LEVINSON, J.

The plaintiffs-appellants William S. Taylor, as an individual, a trustee of the William S. Taylor Trust, and as a representative of a class of taxpayers and homeowners residing in Keauhou, Hawai'i, and Walter Kriewald, as an individual and as a representative of a class of homeowners residing in Keauhou, Hawai'i [hereinafter, collectively, "the Appellants"],[4] appeal from the following orders and judgment of the third circuit court, the Honorable Ronald Ibarra presiding: (1) the January 6, 1997 order partially granting and partially denying the Appellants' motion for partial summary judgment, filed July 19, 1996 [hereinafter, "the January 6, 1997 order"]; (2) the August 5, 1997 order granting the defendant-appellee Watanabe, Ing & Kawashima's [hereinafter, "WIK"] motion to dismiss or in the alternative for partial summary judgment, filed May 15, 1997 [hereinafter, "the August 5, 1997 order"]; and (3) the May 10, 2000 final judgment.

The Appellants argue on appeal that the circuit court erred in: (1) filing the January 6, 1997 order; (2) ruling that "[t]he Fair Debt Collection Practices Act (FDCPA)[, 15

United States Code (U.S.C.) §§ 1692–1692o (1994)[5]] does not apply to the unpaid sewer charges involved in this case"; and (3) filing the May 10, 2000 final judgment, which incorporated the January 6, 1997 and August 5, 1997 orders.

WIK responds (1) that the circuit court correctly ruled that the FDCPA does not apply to the facts of this case and thus properly granted WIK's motion, (2) that the circuit court correctly entered the January 6, 1997 order because there were genuine issues of material fact as to whether the letter was sent in an attempt to collect a debt, and (3) that the Appellants are not entitled to partial summary judgment on their FDCPA claims because they failed to adduce undisputed, competent, and admissible evidence that would prove all the requisite elements of their FDCPA claims.

For the reasons discussed *infra* in section III, we hold: (1) that the circuit court correctly entered the January 6, 1997 order because there was a genuine issue of material fact as to whether WIK was a "debt collector" as defined by 15 U.S.C. § 1692a(6);[6] (2) that the circuit court erred

4. Although Keauhou Master Homeowners Association, Inc. [hereinafter, "the Association"] was one of the plaintiffs in the circuit court, the Association did not appeal.

5. 15 U.S.C. § 1692(e) provides that "the purpose of [the FDCPA is] to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."

6. 15 U.S.C. § 1692a(6) provides:

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who

uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

(F) any person collecting or attempting to collect any debt owed or due or asserted to be

in entering the August 5, 1997 order inasmuch as we adopt the holding of *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 400–03 (3d Cir.2000), that debtors' obligations for sewer charges are "debts" as defined by 15 U.S.C. § 1692a(5);[7] and (3) that the circuit court erred in rendering final judgment in favor of WIK based on the August 5, 1997 order. Accordingly, we (1) affirm the January 6, 1997 order, (2) vacate the August 5, 1997 order, (3) vacate the May 10, 2000 final judgment, and (4) remand this matter to the circuit court for further proceedings consistent with this opinion.

## I. *BACKGROUND*

On January 5, 1995, the Appellants filed a complaint against WIK, alleging, *inter alia*, that WIK had violated several provisions of the FDCPA. The Appellants based their claim on WIK's mailing of approximately 325 letters on or about November 28, 1994, the text of which provided as follows:

> Our law firm represents Keauhou Community Services, Inc. ("KCS"), the company which provides wastewater treatment services to you. Enclosed is a statement of your account for wastewater service charges. With the exception of the charges for December 1994 services, all of these charges are past due. Pursuant to KCS' tariff, a late payment charge of one percent (1%) per month has been assessed on the outstanding balance.
>
> KCS has been properly authorized by the Public Utilities Commission of the State of Hawaii to provide wastewater treatment services to you, and has been providing those services since February 1, 1994. We understand that a number of residents in the Keauhou area had been withholding payment of wastewater service charges based upon the lawsuit filed by the Keauhou Master Homeowners Association,

Inc., challenging the transfer of sewer services from the County to KCS. That lawsuit was dismissed by the Federal District Court on October 19, 1994, although the Association has filed an appeal.

> This is to inform you that if payment is not made by December 15, 1994, KCS intends to pursue its legal rights and remedies against you. These include the right to disconnect service and/or to obtain a judgment against you in court. KCS may also refer the matter to a collection agent.
>
> We would prefer that you cooperate with KCS in payment for the services that are being provided to you without the necessity of having to pursue other remedies.

The Appellants asserted that the letters violated the following provisions of the FDCPA: (1) 15 U.S.C. § 1692e(11), which requires "debt collectors" to advise consumers that they are "attempting to collect a debt and that any information obtained will be used for that purpose"; (2) 15 U.S.C. § 1692g(a)(3), which requires "debt collectors" to advise consumers, either in the initial communication or within five days after receipt of the letter, that "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector"; (3) 15 U.S.C. § 1692g(a)(4), which requires "debt collectors" to advise consumers, either in the initial communication or within five days after receipt of the letter, that

> if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector[;]

---

owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

**7.** 15 U.S.C. § 1692a(5) provides:

(5) The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

(4) 15 U.S.C. § 1692g(a)(5), which requires "debt collectors" to advise consumers, either in the initial communication or within five days after receipt of the letter, that "upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor"; and (5) 15 U.S.C. § 1692f(6), which prohibits "debt collectors" from "collect[ing] or attempt[ing] to collect any debt" by "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if ... there is no present intention to take possession of the property." [8]

On July 19, 1996, the Appellants filed their motion for partial summary judgment with respect, *inter alia*, to the Appellants' FDCPA claims against WIK. In their memorandum in support of their motion, the Appellants noted that, "[i]n response to Interrogatory No. 2 propounded by [the Appellants], Defendant WIK admitted that it had sent the [l]etter and attached ... a list of three hundred twenty-five (325) individual names and addresses of homeowners in Keauhou to which it had sent ... [the l]etter." The Appellants further urged that

> WIK is a "debt collector" within the definition of the [FDCPA] as it "... regularly collects or attempts to collect, ..., debts owed ... another." The fact that WIK regularly attempts to collect debts for another is amply demonstrated by the admission by WIK that it sent out *three hundred twenty-five (325)* collection letters on behalf of Keauhou Community Services, Inc.

(Ellipsis points and emphasis in original.)

On January 6, 1997, the circuit court entered its order partially granting and partially denying the Appellants' motion for partial summary judgment, filed July 19, 1996, ruling that "there is a genuine issue of material fact as to whether the letter dated November 28, 1994 was sent in an attempt to collect a debt."

On May 15, 1997, WIK filed a motion to dismiss or in the alternative for summary judgment, contending that "[d]ismissal of ... [the Appellant's FDCPA] claim is appropriate because, as a matter of law, the Fair Debt Collection Practices Act does not and cannot apply to unpaid sewer charges involved in this case." WIK further explained in its memorandum in support of the motion that,

> [a]s with amounts owed for condominium association dues, cable television services, child support payments, roadway and subdivision fees, and per capita taxes for public services, the unpaid sewer charges at issue do not involve the extension of credit and do not fall within the definition of transactions that Congress intended to regulate through the FDCPA. Therefore, as a matter of law, the FDCPA does not apply to the case at bar and [Appellants'] FDCPA claims against Defendant WIK should be dismissed with prejudice.

On August 5, 1997, the circuit court entered its order granting WIK's motion, ruling as follows:

> The Fair Debt Collection Practices Act (FDCPA) does not apply to the unpaid sewer charges involved in this case. Since this case is one of first impression in this jurisdiction, the Court finds that the rational[e] behind *Nance v. Petty, Livingston, Dawson, & Devening*, 881 F.Supp. 223 (W.D.Va.1994), *Riter v. Bloomberg, Ltd[.]*, 932 F.Supp. 210 (N.D.Ill.1996), *Azar v. Hayter*, 874 F.Supp. 1314 (N.D.Fla. 1995)[,] is compelling and concludes that [Appellants'] allegation of unpaid sewer charges does not constitute a debt under the FDCPA.

On May 10, 2000, the circuit court entered its final judgment in favor of WIK; the judgment incorporated both the January 6, 1997 and August 5, 1997 orders. The final judgment specifically noted that,

> [o]n March 22, 2000, after a settlement was reached by the remaining Parties herein, ... this Court filed a Stipulation for Par-

---

**8.** The Appellants alleged that WIK violated 15 U.S.C. § 1692f(6) by "creat[ing] the false impression that sewer service could, would and was intended to be terminated without disclosing State and Federal law, regulations and requirements for both debt collection and pre-termination hearings."

tial Dismissal with Prejudice of Plaintiffs' Claims Against Defendants ... [and] Order. All Parties to the Stipulation agreed to bear their own costs and fees. This stipulation did not apply to any of the Plaintiffs' claims previously dismissed against Defendant [WIK].

On June 9, 2000, the Appellants timely filed their notice of appeal, restricting their challenge of the circuit court's orders and judgment to their FDCPA claims against WIK.

## II. *STANDARDS OF REVIEW*

### A. *Summary Judgment*

We review the circuit court's grant or denial of summary judgment *de novo*. *Hawaii Community Federal Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted).

*SCI Management Corp. v. Sims*, 101 Hawai'i 438, 445, 71 P.3d 389, 396 (2003) (quoting *Coon v. City and County of Honolulu*, 98 Hawai'i 233, 244–45, 47 P.3d 348, 359–60 (2002)).

### B. *Motion To Dismiss*

It is well settled that:

> A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. *Ravelo v. County of Hawaii*, 66 Haw. 194, 198, 658 P.2d 883, 886 (1983) (quoting *Midkiff [v. Castle & Cooke, Inc.]*, 45 Haw. 409,] 414, 368 P.2d [887,] 890 [ ( 1962) ] ); *Marsland v. Pang*, 5 Haw.App. 463, 474, 701 P.2d 175, 185–86, *cert. denied*, 67 Haw. 686, 744 P.2d 781 (1985). We must therefore view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternative theory. *Ravelo*, 66 Haw. at 199, 658 P.2d at 886. For this reason, in reviewing [a] circuit court's order dismissing [a] complaint ... our consideration is strictly limited to the allegations of the complaint, and we must deem those allegations to be true. *Au [v. Au]*, 63 Haw. 210,] 214, 626 P.2d [173,] 177 (1981).

*Baehr v. Lewin*, 74 Haw. 530, 545, 852 P.2d 44, 52, *reconsideration granted in part and denied in part*, 74 Haw. 650, 875 P.2d 225 (1993).

*In re Estate of Rogers*, 103 Hawai'i 275, 280–81, 81 P.3d 1190, 1195–96 (2003) (quoting *Blair v. Ing*, 95 Hawai'i 247, 252, 21 P.3d 452, 457 (2001) (quoting *Touchette v. Ganal*, 82 Hawai'i 293, 297–98, 922 P.2d 347, 351–52 (1996))) (brackets and ellipsis points in the original).

## III. *DISCUSSION*

### A. *The Circuit Court Correctly Entered The January 6, 1997 Order Because There Was A Genuine Issue Of Material Fact As To Whether WIK Was A "Debt Collector" As Defined By 15 U.S.C. § 1692a(6).*

On appeal, the Appellants contend that the circuit court abused its discretion in entering the January 6, 1997 order. The Appellants maintain that "a reasonable reading of [WIK's] [l]etter," which they note was sent to 325 KCS consumers, "can only be construed as a *clear attempt to collect a debt* and that no genuine issue of material fact exists with respect to that issue and that the

"[c]ircuit [c]ourt abused its discretion in not so ruling." (Emphasis in original.)

In response, WIK asserts that the Appellants "did not provide undisputed, admissible evidence to prove that [WIK] was a 'debt collector' under the FDCPA." We agree with WIK.

The FDCPA "prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins,* 514 U.S. 291, 292, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). Pursuant to 15 U.S.C. § 1692a(6), *supra* note 5,

> [t]he term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or *who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.*

(Emphases added.) In *Heintz,* the United States Supreme Court held that attorneys can qualify as "debt collectors" under the FDCPA if such attorneys " 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." 514 U.S. at 298, 115 S.Ct. 1489.

In *Schroyer v. Frankel,* 197 F.3d 1170 (6th Cir.1999), the United States Court of Appeals for the Sixth Circuit thoroughly explained "what constitutes 'regularly' collecting or attempting to collect debts in the context of an attorney or law firm." *Id.* at 1174.

> When interpreting the FDCPA, we begin with the language of the statute itself, *see Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, [100 S.Ct. 2051, 64 L.Ed.2d 766] ... (1980), since the intent of Congress is "best determined by the statutory language it chooses." *Sedima, S.P.R.L. v. Imrex,* 473 U.S. 479, 495, [105 S.Ct. 3275, 87 L.Ed.2d 346] n. 13 (1985). In so doing, this Court must consider the language and design of the statute as a whole as well as the specific provision at issue. *See K-Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, [108 S.Ct. 1811, 100 L.Ed.2d 313] (1988). The term "regularly" means "[a]t fixed and certain intervals, regular in point

of time. In accordance with some consistent or periodical rule of practice." *Black's Law Dictionary* 1286 (6th ed.1990). The term "regular" means "[u]sual, customary, normal or general.... Antonym of 'casual' or 'occasional.' " *Id.* at 1285. These definitions suggest that an individual or entity must have more than an "occasional" involvement with debt collection activities to qualify as a "debt collector" under the FDCPA. *See Mertes v. Devitt,* 734 F.Supp. 872, 874–75 (W.D.Wis. 1990); *see also Nance v. Petty, Livingston, Dawson & Devening,* 881 F.Supp. 223, 225 (W.D.Va.1994).

Furthermore, considering § 1692a(6) as a whole, it is clear that Congress intended the "principal purpose" prong to differ from the "regularly" prong of its definition of "debt collector." *See Garrett v. Derbes,* 110 F.3d 317, 318 (5th Cir.1997) (*per curiam*). Thus, one "may regularly render debt collection services, even if these services are not a principal purpose of his business." *Id.* As another court has explained, "the word 'regular' is not synonymous with the word 'substantial.' Debt collection services may be rendered 'regularly' even though these services may amount to a small fraction of the firm's total activity." *Stojanovski v. Strobl & Manoogian, P.C.,* 783 F.Supp. 319, 322 (E.D.Mich.1992). Under this interpretation of "regular" or "regularly," an attorney may be a "debt collector" under the FDCPA even when the ratio of his debt collection efforts to other legal efforts is small. *Id.*

> *Ordinary interpretations of the words "regular" and "regularly" fail to delineate the amount of debt collection activity required for this Court to find an attorney a "debt collector" under the FDCPA. See White v. Simonson & Cohen, P.C.,* 23 F.Supp.2d 273, 278 (E.D.N.Y.1998). When the language of a provision is ambiguous, we look to the legislative history of the statute in question to ascertain its confines. *See Blum v. Stenson,* 465 U.S. 886, 896, [104 S.Ct. 1541, 79 L.Ed.2d 891] (1984). *In its enactment of the FDCPA, Congress intended that "[t]he requirement*

*that debt collection be done 'regularly' would exclude a person who collects a debt for another in an isolated instance, but would include those who collect for others in the regular course of business."* S.Rep. No. 95–382, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1697–98. Assuming "that attorneys were only incidentally involved in debt collection activities," H.R.Rep. No. 99–405, *reprinted in* 1986 U.S.C.C.A.N. 1752, 1759, Congress originally retained in the statute an exception for attorneys collecting debts on behalf of clients. *See* Fair Debt Collection Practices Act of 1977, Pub.L. No. 95–109, § 803, 91 Stat. 874 (1977). In the years that followed, Congress discovered that more attorneys were engaging in debt collection practices than non-attorneys. See H.R.Rep. No. 99–405, *reprinted in* 1986 U.S.C.C.A.N. 1752, 1752 (observing that by 1985, 5,000 attorneys were engaged in the debt collection industry, as compared to 4,500 lay debt collection firms). Congress also learned that many attorneys advertised their exemption from the FDCPA to solicit creditors. *See* H.R.Rep. No. 99–405, *reprinted in* 1986 U.S.C.C.A.N. 1752, 1756. In response to these findings, Congress repealed the attorney exemption in 1986. *See* Fair Debt Collection Practices Act Amendment, Pub.L. No. 99–361, 100 Stat. 768 (1986). This repeal changed the FDCPA so that "any attorney who is in the business of collecting debts will be regarded by the Act as a debt collector." H.R.Rep. No. 99–405, *reprinted in* 1986 U.S.C.C.A.N. 1752, 1753.

*Plaintiffs argue that in revoking the attorney exemption, Congress intended for the FDCPA to apply to any attorney who collects debts in the regular course of business, even if he does so as an incidental part of his regular practice of law.* To support this assertion, Plaintiffs cite *Crossley v. Lieberman*, which notes the following analysis of Congress' intent:

> Both the legislative history of this amendment and the case law regarding similar provisions in the Federal Consumer Credit Protection Act demonstrates [sic] that any attorney who engages in collection activities more than a

handful of times per year must comply with the FDCPA. Both sides in the floor debate conceded that the amendment would make the act apply not only to those lawyers who have collection practices but also to those who collect on an occasional basis and the small law firm which collects debts incidentally to the general practice of law.

868 F.2d 566, 569 (3d Cir.1989) (quoting R. Hobbs, *Attorneys Must Now Comply With Fair Debt Collection Law,* Pa. J.L. Rptr., Nov. 21, 1987, at 3). While the commentary cited in *Crossley* bolsters Plaintiffs' position, we find it unpersuasive.

*As a preliminary matter, we observe that the question of whether the defendant "regularly" collected debts was not actually before the Crossley court. See White, 23 F.Supp.2d at 277. Setting that aside, the legislative history hardly makes clear that attorneys who collect debts occasionally and small firms that collect debts incidentally to their general law practices are "debt collectors" under the FDCPA. The House Report accompanying the 1986 amendment to the FDCPA explained that Congress revoked the attorney exemption because its assumption that attorneys were only incidentally involved in debt collection no longer rang true, stating: "[i]n recent years, a large number of law firms have gone into specialized debt collection, and many of these firms use persons full time to collect debts. Repeal of the exemption will require these firms to comply with the same standards of conduct as lay debt collection firms."* H.R.Rep. No. 99–405, *reprinted in* 1986 U.S.C.C.A.N. 1752, 1759. *Elsewhere the House Report expresses its concern about the entry of attorneys into the "debt collection industry," and "the proliferation of attorney debt-collection firms." Id.* at 1754, 1756. *Moreover, the House Report repeatedly identifies attorneys "in the business of" collecting debts as the target of its legislation. See id.* at 1753, 1754.

*Id.* at 1174–76 (emphases added).

Based on the foregoing, the *Schroyer* court concluded

*that for a court to find that an attorney or law firm "regularly" collects debts for purposes of the FDCPA, a plaintiff must show that the attorney or law firm collects debts as a matter of course for its clients or for some clients, or collects debts as a substantial, but not principal, part of his or its general law practice.* Such an interpretation actuates the apparent purpose of Congress in creating attorney liability under the FDCPA: "[w]hile attorneys who are considered competitors of traditional debt collection companies should be covered under the Act, a firm whose debt collection activity does not approximate that of a traditional collection agency should not be suable under the act." *White,* 23 F.Supp.2d at 276. *In identifying such attorneys, other courts have relied upon a variety of factors, including the volume of the attorney's collection activities, the frequent use of a particular debt collection document or letter, and whether there exists a steady relationship between the attorney and the collection agency or creditor he represented. See, e.g., Cacace v. Lucas,* 775 F.Supp. 502, 504 (D.Conn.1990). *Courts have considered what portion of the overall caseload debt collection cases constitute, and what percentage of revenues derive from debt collection activities. See, e.g., Von Schmidt v. Kratter,* 9 F.Supp.2d 100, 102 (D.Conn. 1997); *Nance,* 881 F.Supp. at 224. *Some have maintained that even where debt collection takes up a minor portion of a law practice, "debt collector" liability may lie where the defendant has an "ongoing relationship" with a client whose activities substantially involve debt collection. See Stojanovski,* 783 F.Supp. at 322.

*Id.* at 1176 (emphasis added). The Sixth Circuit ultimately determined that the plaintiffs in *Schroyer* had not adduced facts sufficient to "support a claim that [the defendants, who were the attorneys of a creditor,] were 'in the business' of debt collection, that they were in the 'debt collection' industry, or that [the defendants were] a 'debt collection firm[,]'" specifically noting as follows: (1) "only two percent of [the attorneys'] overall practices consisted of debt collection cases, and ... the firm did not employ individuals

full-time for the purpose of collecting debts"; (2) the "[p]laintiffs failed to offer evidence showing that fees generated or collected by [the attorneys] from debt collection activities constituted a great portion of overall revenues"; and (3) the plaintiffs "failed to offer proof that [the attorneys] handled debt collection cases as part of an ongoing relationship with a major creditor or business client with substantial debts for collection." *Id.* at 1176–77.

Several other federal courts have adopted the *Schroyer* approach in determining whether attorneys qualify as "debt collectors." *See Havens–Tobias v. Eagle,* 127 F.Supp.2d 889, 895 (S.D.Ohio 2001); *Johnson v. Federal Express Corp.,* 147 F.Supp.2d 1268, 1275 (M.D.Ala.2001); *Kvassay v. Hasty,* 236 F.Supp.2d 1240, 1269 (D.Kan.2002). Moreover, many federal courts, confronting detailed records regarding the extent of a law firm's debt collection practices, have concluded that plaintiffs had failed to adduce sufficient facts to support a finding that the attorneys were "debt collectors" for purposes of the FDCPA. *See, e.g., Mertes,* 734 F.Supp. at 874 (finding that plaintiffs could not claim that the defendant was a "debt collector" when the "defendant averaged less than two collection matters per year ... [, which] comprised less than one percent of his practice"); *White,* 23 F.Supp.2d at 278 (concluding that "by sending out one mailing of thirty-five collection letters in nearly four decades of practice, defendant cannot be said to 'regularly collect[ ] ... debts' "); *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti,* 155 F.Supp.2d 60, 64 (S.D.N.Y.2001) (plaintiff's proffered evidence that defendants sent "145 three day notices" over the course of a year and that "these notices generated $5,000 in revenue, amounting to approximately .05% of [the attorneys'] revenue over that period" was insufficient); *Kvassay,* 236 F.Supp.2d at 1269 (concluding that there was "insufficient evidence to find as a matter of law that the [defendants] 'regularly collect debts' " because "[t]he majority of the facts regarding the volume and percentage of the [defendants'] debt collection practices have not been established").

As we have noted, the Appellants' memorandum in support of their July 19, 1996 motion argued that

WIK is a "debt collector" within the definition of the [FDCPA] as it "... regularly collects or attempts to collect, ..., debts owed ... another." The fact that WIK regularly attempts to collect debts for another is amply demonstrated by the admission by WIK that it sent out *three hundred twenty-five (325)* collection letters on behalf of Keauhou Community Services, Inc.

(Ellipsis points and emphasis in original.) Based on the foregoing federal authority, the mere fact that WIK mailed 325 collection letters, without any other evidence as to the factors enumerated in *Schroyer* (*e.g.*, the volume of WIK's debt collection activities or the percentage of revenues that WIK derives from its debt collection practices), is insufficient to support a finding that WIK was a "debt collector." Thus, inasmuch as there was a genuine issue of material fact regarding whether WIK was a "debt collector" as defined by 15 U.S.C. § 1692a(6), the circuit court correctly denied the Appellants' motion for partial summary judgment.[9]

B. *The Circuit Court Erred In Entering The August 5, 1997 Order And In Incorporating The Order Into The May 10, 2000 Final Judgment Because, Pursuant To 15 U.S.C. § 1692a(5), Sewer Obligations Constitute "Debts" For Purposes Of The FDCPA.*

█ The Appellants cite the decisions of several federal trial and appellate courts in asserting that sewer charges are "debts" for purposes of the FDCPA. In particular, the Appellants allege that the circuit court erred in relying on *Nance v. Petty, Livingston, Dawson, & Devening,* 881 F.Supp. 223

(W.D.Va.1994), *Riter v. Bloomberg,* 932 F.Supp. 210 (N.D.Ill.1996), *rev'd by Newman v. Boehm, Pearlstein & Bright, Ltd.,* 119 F.3d 477 (7th Cir.1997), *see infra* note 10, and *Azar v. Hayter,* 874 F.Supp. 1314 (N.D.Fla.1995), inasmuch as the foregoing cases themselves rely upon the Third Circuit's decision in *Zimmerman v. HBO Affiliate Group,* 834 F.2d 1163 (3d Cir.1987), which held that the FDCPA required "the offer or extension of credit to a consumer" for an obligation to qualify as "debt." *Zimmerman,* 834 F.2d at 1168–69. In arguing that *Zimmerman* provides an unstable foundation for the cases upon which the circuit court relied, the Appellants refer to another Third Circuit decision, *Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 400–03 (3d Cir.2000). After careful consideration, we adopt the approach espoused by the *Pollice* court.[10]

In *Pollice,* a limited partnership purchased from the City of Pittsburgh and related government entities thousands of claims and liens that the municipality had accrued against homeowners who, *inter alia,* had not fully paid their sewer bills. *Id.* at 385. The homeowners brought suit against the limited partnership for FDCPA claims arising out of the partnership's collection efforts. *Id.* at 385–86. In addressing the question whether sewer obligations constitute "debts" for purposes of the FDCPA, the *Pollice* court reasoned as follows:

Defendants [ (*i.e.,* the limited partnership) ], relying on a statement in our *Zimmerman* decision, argue that ... sewer ... claims are not "debts" because there was no "offer or extension of credit" to homeowners. *See Zimmerman,* 834 F.2d at 1168 ("We find that the type of transaction which may give rise to a 'debt' as

---

9. In entering the January 6, 1997 order, the circuit court concluded that "there is a genuine issue of material fact as to *whether the letter dated November 28, 1994 was sent in an attempt to collect a debt.*"; (Emphasis added.) Nevertheless, inasmuch as "[w]e review the circuit court's grant or denial of summary judgment *de novo,*" *SCI Management Corp.,* 101 Hawai'i at 445, 71 P.3d at 396, and based on our discussion *supra,* we believe that the circuit court reached the correct result in denying the Appellants' motion for partial summary judgment.

10. We also note that *Riter* was reversed by *Newman v. Boehm, Pearlstein & Bright, Ltd.,* 119 F.3d 477 (7th Cir.1997), which observed that *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.,* 111 F.3d 1322, 1326 (7th Cir.1997) "rejected *Zimmerman's* 'credit' requirement and held that 'an offer or extension of credit is not required for a payment obligation to constitute a 'debt' under the FDCPA.' " *Newman,* 119 F.3d at 480.

defined in the FDCPA, is the same type of transaction as is dealt with in all other subchapters of the Consumer Credit Protection Act, *i.e.,* one involving the *offer or extension of credit* to a consumer.") (emphasis added). As the district court noted, *see Pollice,* 59 F.Supp.2d at 484 n. 9, this statement from *Zimmerman* has been widely disavowed by several other courts of appeals, which have taken the broader view that the FDCPA applies to all obligations to pay money which arise out of consensual consumer transactions, regardless of whether credit has been offered or extended. *See, e.g., Romea v. Heiberger & Assocs.,* 163 F.3d 111, 114 n. 4 (2d Cir. 1998) (noting that several circuits have "disavowed" the "dicta" in *Zimmerman* that the FDCPA applies only to transactions involving the "offer or extension of credit"); *Brown v. Budget Rent-A-Car Sys., Inc.,* 119 F.3d 922, 924 n. 1 (11th Cir.1997) (rejecting *Zimmerman* "[t]o the extent that it read an extension of credit requirement into the definition of debt"); *Bass v. Stolper, Koritzinsky, Brewster & Neider,* 111 F.3d 1322, 1325–26 (7th Cir. 1997) (rejecting *Zimmerman* and indicating that "[a]s long as the transaction creates an obligation to pay, a debt is created"); *see also Wayne Hill, Annotation, What Constitutes "Debt" for Purposes of Fair Debt Collection Practices Act,* 159 A.L.R. Fed. 121, 131, 2000 WL 150759 (2000) ("The term 'debt' as used in the [FDCPA] has been construed broadly to include any obligation to pay arising out of a consumer transaction.").

*We are not bound by the "disavowed" statement in Zimmerman, as it was dictum.[ ] In our view, the plain meaning of section 1692a(5) indicates that a "debt" is created whenever a consumer is obligated to pay money as a result of a transaction whose subject is primarily for personal, family or household purposes. No "offer or extension of credit" is required. Accordingly, homeowners' original obligations to pay the government entities for … sewer service constituted "debts," even though the government entities did not extend homeowners any right to defer payment of their obligations.*

*Id.* at 400–401 (internal footnotes omitted) (emphasis added). Specifically tracking the language of 15 U.S.C. § 1692a(5), *see supra* note 7, the *Pollice* court further explained

> that *homeowners' … sewer obligations meet the definition of "debt";* indeed, these obligations constituted "debts" from the time they initially were owed to the government entities, and they retained that status after their assignment to [the limited partnership]. At the time these obligations first arose, homeowners ("consumers" of … sewer services) had an "obligation … to pay money" to the government entities which arose out of a "transaction" (requesting … sewer service) the subject of which was "services … primarily for personal, family, or household purposes."

*Id.* at 400 (some ellipsis points added and some in original) (emphasis added).

Based on the straightforward reasoning of *Pollice,* we hold that, pursuant to 15 U.S.C. § 1692a(5), "sewer obligations meet the definition of 'debt'" for purposes of the FDCPA. *Id.* Inasmuch as the August 5, 1997 order suffers from a defective definition of "debt," the circuit court erred in dismissing the Appellants' FDCPA claims because it does not "appear[ ] beyond doubt that the [Appellants] can prove no set of facts in support of [their] claim that would entitle [them] to relief." *In re Estate of Rogers,* 103 Hawai'i at 280, 81 P.3d at 1195. Consequently, the circuit court's May 10, 2000 final judgment, which incorporated the August 5, 1997 order, is also flawed.

## IV. CONCLUSION

In light of the foregoing, we (1) affirm the January 6, 1997 order, (2) vacate the August 5, 1997 order, (3) vacate the May 10, 2000 final judgment, and (4) remand this matter to the circuit court for further proceedings consistent with this opinion.