Freddy S. **CAMPBELL,** Plaintiff

v.

**CREDIT BUREAU SYSTEMS, INC., Defendants.**

**Civil Action No. 08–177–KSF.**

United States District Court, E.D. Kentucky, Central Division at Lexington.

Sept. 9, 2009.

Order Denying Motion to Amend Oct. 23, 2009.

Freddy. S. Campbell, Lexington, KY, Pro se.

Brian S. Katz, Law Office of Brian S. Katz, Paducah, KY, Philip J. Castagno, Louisville, KY, for Defendants.

## OPINION & ORDER

KARL S. FORESTER, Senior District Judge.

This civil action filed by the plaintiff, Freddy S. Campbell, is currently before the Court on his claims pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), against two entities: Credit Bureau Systems, Inc. ("CBSI") and GLA Collection Company, Inc. ("GLA"). Both defendants have renewed their motions to dismiss or for summary judgment [DE ## 60 and 63], and these motions are ripe for review. This matter was referred to Magistrate Judge J. Gregory Wehrman pursuant to 28 U.S.C. § 636(b)(1)(A) for a report and recommendation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 11, 2008, Campbell, an inmate at the Federal Medical Center in Lexington, Kentucky, filed this *pro se* civil action asserting claims against the defendants under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 and the Fair Credit Reporting Act, 15 U.S.C. § 1681 [DE # 2]. In response, the defendants filed a variety of dispositive motions. Discovery was stayed pending disposition of these motions [DE # 37]. Then, on January 27, 2009, the Court partially granted and partially denied CBSI and GLA's motions to dismiss and/or for summary judgment. Specifically, the Court denied the motions without prejudice as to Campbell's claims under the FDCPA, finding additional factual development of the record to be necessary, but granted the motions as to Campbell's claims under the Fair Credit Reporting Act. The Court further denied Campbell's first and second motions for summary judgment as well as Campbell's motion for default judgment. The Court ultimately dismissed all claims against de-

fendant Professional Collections [DE # 47].

The Court's January 27, 2009 opinion explained that although the Court was "substantially inclined" to grant CBSI and GLA's dispositive motions under the settled published authority cited by those parties, relief was inappropriate absent further development of the factual record concerning a single legal issue—whether CBSI and GLA had mailed verification notices to Campbell in 2006 and 2007. Thus, the Court denied CBSI and GLA's motions without prejudice to refiling. Discovery was allowed to proceed on the remaining issue and CBSI and GLA subsequently renewed their dispositive motions [DE ## 60 and 63]. Included with their motions were supplemental affidavits addressing mailing of the verification notices to Campbell. Campbell has filed his motion to exclude these affidavits [DE # 71].

In his Report and Recommendation of July 14, 2009, Magistrate Judge Wehrman reviewed the procedural history of the case and made the following recommendations. First, with respect to Campbell's motion to reject the supplemental affidavits, the Magistrate Judge concluded that the affidavits and renewed motions were filed at the direction of the Court. Despite Campbell's bare allegations that the affidavits were filed in bad faith, the Magistrate Judge recommends that Campbell's motion to exclude the supplemental affidavits be denied.

Next, the Magistrate Judge turned to CBSI and GLA's renewed motions for summary judgment. For the reasons set forth in the Court's previous opinion of January 27, 2009, and supplemented with the information contained in the supplemental affidavits, the Magistrate Judge concluded that CBSI and GLA did not violate the FDCPA. Accordingly, the Magistrate Judge recommends that their motions for summary judgment be granted.

Finally, the Magistrate Judge addressed the defendants' renewed request for attorneys' fees. Although the FDCPA allows for attorneys' fees in cases brought in bad faith or for the purpose of harassment, the Magistrate Judge found no basis for finding that Campbell acted in bad faith. Therefore, the Magistrate Judge recommends that the defendants' renewed motion for attorneys' fees be denied [DE # 82].

Campbell has filed timely objections to the Magistrate Judge's Report and Recommendation [DE # 84]. Specifically, Campbell argues that GLA did not fully comply with the validation notice requirement of the FDCPA because although there were two disputed accounts, the validation notice only addressed one account. GLA has filed its response to Campbell's objections, noting that the validation notice referenced each account and balance, and that GLA sent validations and copies of medical bills for both accounts on March 19, 2008 and April 16, 2008.

## II. ANALYSIS

This Court must make a *de novo* determination of those portions of the Magistrate Judge's proposed findings of fact and recommendation to which objection is made. 28 U.S.C. § 636(b)(1)(C). Reviewing the record, the Court agrees with the Magistrate Judge that CBSI and GLA have fully complied with their duties under the FDCPA. The statutorily required validation notices were sent, Campbell neither received nor responded to those notices, but the notices were not returned by the postal service to the debt collectors as undeliverable. When the thirty-day statutory period granted to Campbell to reply to an initial communication passed, the defendants could continue efforts to collect

the debt without fear of violating the FDCPA. However, the record reveals that neither defendant took any additional steps to collect the debt. While Campbell did make an untimely request for information from the defendants, the defendants nevertheless responded by acquiring and sending to Campbell verification of the debts in the form of itemized bills. Campbell now seeks to punish the defendants for responding to his request. As the Magistrate Judge concluded, the FDCPA simply does not provide the relief that Campbell seeks.

Campbell's sole objection to the Magistrate Judge's Report and Recommendation is his argument that GLA failed to comply with the FDCPA with respect to one of his disputed accounts, However, the record reveals that GLA sent validation and copies of medical bills for both accounts on March 19, 2008 and on April 16, 2008. Having considered Campbell's objections, which the Court finds to be without merit, and having made a *de novo* determination, the Court is in agreement with the Magistrate Judge's Report and Recommendation. Therefore, Campbell's objections will be overruled.

## III. CONCLUSION

For the reasons set forth above, the Court, being otherwise fully and sufficiently advised, **HEREBY ORDERS** as follows:

(1) the Magistrate Judge's Report and Recommendation [DE # 82] is **ADOPTED** as and for the opinion of the Court;

(2) the plaintiff's motion to exclude supplemental affidavits [DE # 71] is **DENIED;**

(3) the plaintiff's objections [DE # 84] are **OVERRULED;**

(4) the defendants' motions to dismiss and/or for summary judgment [DE # 60 and 63] are **GRANTED;** and

(5) judgment in favor of the defendants will be entered contemporaneously with this Opinion & Order.

## *REPORT AND RECOMMENDATION*

J. GREGORY WEHRMAN, United States Magistrate Judge.

The remaining claims in this civil action brought by Plaintiff, Freddy S. Campbell, are brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (FDCPA), against two entities: Credit Bureau Systems, Inc. (CBSI) and GLA Collection Company, Inc. (GLA). Both Defendants have renewed their motions to dismiss or for summary judgment, Docs. 60 and 63; Plaintiff Campbell responded to both, Docs. 69 and 70; and, both Defendants filed replies to the respective responses, Doc. 72 and 74. Dispositive motions have been referred to the undersigned for recommended findings of fact and conclusions of law. Doc. 62. Other pending motions are disposed of by Order filed concurrently with this Report and Recommendation.

### *Factual Background*

A timeline of pertinent events is attached as an appendix to this Report and Recommendation. Plaintiff Campbell received medical care at King's Daughters' Medical Center while a pretrial detainee housed in the Carter County Detention Center. Doc. 50, attachment 1, p. 1. He learned that he had been charged for that medical care by observing credit reports, which reflected an adverse credit rating. *Id.* at 2; *see also* attachment 2.[1] However, in his sworn, but not notarized, declaration

---

1. Although the attached page from a credit report bears a date after the filing of this lawsuit, Plaintiff Campbell's sworn statement that he learned of the debts by checking his credit reports is uncontradicted in the record.

he denied receiving any notice of the debt from any collection agency. *Id.* By certified mail dated on or around February 19, 2008, he notified three debt collectors that he disputed the debts, requested verification of those debts, and asked that collection efforts cease. *See* Doc. 9 and attachments. On February 21, he requested a psychiatric consultation, because he claimed "a collection agency is worrying me" for a debt. *Id.,* attachment, p. 8. After he sent the certified letters to the two Defendants, he received a "reminder notice" dated February 29, 2008 from GLA. Doc. 71, attachment 4, p. 2. He also received letters dated March 19 and April 16, 2008 from GLA; these letters contained the requested verification of the debt owed on each of the two accounts referred to GLA. *Id.* attachment 1. The only letter sent to Plaintiff Campbell by Defendant CBSI after its receipt of his certified letter was the verification of the debt sent on April 3, 2008. Doc. 69, Pltf's Exh. B, p. 5.

Sheila Renfro, Director of Operations of CBSI's Lexington, Kentucky office stated in an affidavit that an account for a Freddy Campbell, for services rendered at Kings Daughters Diagnostic Center was placed for collection. Doc. 48, attachment 1, pp. 1–2. The initial communication from CBSI to Plaintiff Campbell was by letter sent on January 12, 2006, which contained the validation notice required by 15 U.S.C. § 1692 [2]. *Id.* According to CBSI records, CBSI received a letter from Plaintiff Campbell dated February 19, 2008; in that letter, he disputed the validity of the debt and requested validation. *Id.* CBSI provided Plaintiff Campbell with a copy of the Kings Daughters bill with correspondence sent on or about April 3, 2008. *Id.* In her supplemental affidavit, Ms. Renfro added that the address given to CBSI when the account was placed was 13 Cross Bar Road, Grayson, Kentucky, 41143. Doc. 60, attachment 2, p. 2. Although CBSI maintains a policy and procedure to note in its files any mail that is returned, for any reason, the records maintained in the ordinary course of business do not indicate that the correspondence sent to Plaintiff Campbell at that address was returned to CBSI. *Id.* After sending the initial letter on January 12, 2006, CBSI took no further action to attempt to collect the account other than providing the verification requested by Plaintiff Campbell. *Id.* at 3.

A "Debtor Account History" provided to Plaintiff Campbell by CBSI was printed on March 5, 2009. Doc. 69, Pltf's Exh. B, pp. 4–18. The current address shown for Plaintiff Campbell is the "300 Virginia Street" address in Charleston, but a note shows that CBSI knows this is a "bad address." [3] *Id.* at 4. As of December of 2005, the address shown for Plaintiff Campbell is the "13 Cross Bar Road" one. *Id.* A letter appears to have been sent on February 28,

---

**2.** A blank CBSI form contains the notation, "This is an attempt to collect a debt. Information gained will be so used," as well as the following paragraph:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume that this debt is valid. If you notify this office within 30 days that you dispute all or a portion of this debt, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such verification or judgment. If you request within 30 days

> after receiving this notice, this office will also provide you with the name and address of the original creditor, if different from the creditor listed above.

Doc. 69, Pltf's Exh. B, p. 15. The blank GLA form is very similar. *See* Doc. 71, attachment 2, p. 1.

**3.** Because Plaintiff Campbell's Complaint indicates that he received the validation requested from CBSI, that correspondence must have been sent to the correct current address. *See* Doc. 2, ¶ 16.

2006, to the 300 Virginia Street address. On March 31, 2006, a third letter was apparently sent, presumably to the same address. *Id.* at 5. The next record notation is dated September 21, 2006 and says that CBSI "RCVD CNSMR DSPUTE–VRFD AS RPRTD;" further, on February 2, 2007, a similar notation appears: "RCVD CONSUMER DISPUTE VERIFIED AS REPROTED [sic]." *Id.* CBSI appears to have taken no further action until it received the certified letter disputing the account. After receipt of that letter, CBSI marked the account as disputed, obtained verification from Kings Daughters, and sent it to Plaintiff Campbell on April 3, 2008. *Id.*

Janean Fritsch, an assistant collection manager for GLA in Louisville, Kentucky, stated in her affidavit that an account for Freddy Campbell for services rendered by King's Daughters Medical Center was placed with GLA for collection in March of 2007. Doc. 48, attachment 2, p. 1. The initial communication from GLA to Plaintiff Campbell was sent by letter dated March 16, 2007 and contained the standard language required by 15 U.S.C. § 1692(g)(a). *Id.* at 2. GLA received a letter from Plaintiff Campbell dated February 19, 2008 disputing the validity of the debts and requesting validation of them. *Id.* GLA provided a copy of the bills along with other information on March 19, 2008. *Id.* In her supplemental affidavit, Ms. Fritsch added that a detailed history of the account, on a separate screen, showed that the original letter was returned to GLA and not received by Plaintiff Campbell. Doc. 63, attachment 3, p. 2. After an updated address was located, a subsequent letter, identical to the first, was sent to Plaintiff Campbell on May 8, 2007. *Id.*

Another GLA employee, Patrick Lynch, Manager and Compliance Officer, confirmed in his affidavit that the Kings Daughters' account for services rendered

to Plaintiff Campbell was placed with GLA in March of 2007. Doc. 63, attachment 2, p. 1. The address given for Plaintiff Campbell at that time was "300 Virginia Street, # 4, Charlestown, [sic] WV 25301." *Id.* The initial communication sent on March 16, 2007 was sent by first-class mail to this address and contained the validation requirements of 15 U.S.C. § 1692. GLA tracks returned mail and notes in its files when mail is returned; it also takes affirmative action to locate another address, using a skip-tracing company called Accurint. *Id.* at 2. When the initial communication was returned to GLA on March 28, 2007, GLA sent information to Accurint, which provided an address of "P.O. Box 969, St. Albans WV 25177." *Id.* An "identical letter" containing all the validation requirements was sent to Plaintiff Campbell at the post office box address on May 8, 2007. That correspondence was not returned to GLA. *Id.* GLA received a letter from Plaintiff Campbell dated February 19, 2008 disputing the debt and requesting validation of the debt; it provided the validation on March 19, and April 26, 2008. *Id.* GLA did not make any other efforts, in writing or otherwise, to collect after the validation provided in March and April. *Id.*

Plaintiff Campbell submits a letter from a clerk at the St. Albans, West Virginia post office stating that the post office box referenced above was closed for nonpayment on June 3, 2005. Doc. 70, Pltf's Exh. B. Mail is forwarded, if at all, for no longer than one year; after a year, it would be returned to sender. *Id.*

As part of his initial disclosures under Rule 26(a)(1), Plaintiff Campbell filed a Federal Bureau of Prisons Program Statement, Number 5800.10, dated November 3, 1995, which details procedures for processing inmate mail. The Bureau has no authority to dispose of or destroy mail ad-

dressed to a specific person and "shall return undelivered mail to the local USPS." Doc. 67, attachment 3, p. 14. Incoming general correspondence to an inmate will be opened, read, and inspected prior to delivery. *Id.* at 22. However, only mail for inmates currently at the institution is opened; any mail directed to "inmates not presently at the institution shall be returned, unopened, to the local servicing post office with endorsement for forwarding or other appropriate disposal." *Id.* at 23. If an inmate is no longer at the institution, the unopened mail is endorsed with a forwarding address or the notation that the address is not known, and the mail will be returned to the post office. *Id.* at 36. The Bureau forwards mail for only thirty days, and an inmate must use a postal service change-of-address kit to notify correspondents of change of address to ensure forwarding by the post office past the thirty days. *Id.*

### Proposed Findings of Fact

1. The later and supplemental affidavits of employees of the Defendants are not inconsistent with their earlier affidavits or with any other evidence of record; rather, the facts contained in the later affidavits supplement the record with information specifically requested by the presiding district court judge.

2. When Defendant GLA had its first initial communication returned, it followed its normal business practice of obtaining a different address and resending the initial communication. The second initial communication was not returned to Defendant GLA by the postal service.

3. Defendant CBSI's initial communication to Plaintiff Campbell was not returned to it by the postal service.

4. Prior to receipt of Plaintiff Campbell's certified letter on February 25, 2008, GLA had taken no action on his account since May of 2007, a period of nine months.

5. Prior to receipt of Plaintiff Campbell's certified letter on February 21, 2008, CBSI had taken no action on his account since March of 2006, a period of twenty-three months.

6. Undelivered mail to inmates is not destroyed; for thirty days, such mail is forwarded. After that time, general mail received for an inmate no longer at the institution is returned to the postal service for forwarding or disposal.

7. After receiving the certified letter from Plaintiff Campbell, in which he disputed the debt and requested verification of it, Defendant GLA sent him a reminder notice dated February 29, 2008.

8. The only other communications sent by Defendant GLA to Plaintiff Campbell after receipt of his certified letter were two letters, in March and April of 2008, containing the debt validation he requested in February. The only other contacts made by GLA in connection with Plaintiff Campbell's account were unsuccessful telephone calls to him and an "in house letter" for an itemized statement.

9. The only communication sent by Defendant CBSI to Plaintiff Campbell after receipt of his certified letter was one letter in April containing the debt verification requested in the February letter.

10. Someone, either the original creditor or one or both of the Defendants, reported the debt to one or more of the credit bureaus prior to receipt of Plaintiff Campbell's certified letter disputing the debt.

### Discussion

Although both CBSI and GLA have styled their motions as seeking either dismissal or summary judgment, dismissal is not appropriate under Federal Rule of Civil Procedure 12(b)(6), because the Court is considering matters outside the pleadings, such as affidavits and exhibits.

The appropriate inquiry is, therefore, whether summary judgment is appropriate on the existing record: Summary judgment is only granted if no "genuine issue as to any material fact" remains for trial and the moving party is "entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party has the burden of showing an absence of evidence to support a claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has carried that burden, the non-moving party must go beyond the pleadings to establish by sufficient proof—affidavits, depositions, answers to interrogatories, admissions, etc.—of specific facts showing the existence of a genuine issue of material fact for trial. *Id.* The first motion to be addressed in this report and recommendation concerns what evidence is properly before the Court.

*Document # 71: "Motion for Court to Take Judicial Notice of 'Motion for Impeachment with a Prior Inconsistent Statement' and to Reject as Being Introduced as Evidence"*

As this particular motion could have an impact on what evidence is considered during review of the summary judgment motions of GLA and CBSI, the motion to exclude the later affidavits is considered together with the summary judgment motions. The district court judge directed the Defendants to supplement the record with specific information: the address to which the initial communication was sent and whether that communication was returned as undeliverable. *See* Doc. 47, p. 23. They did so, filing supplemental motions along with affidavits. *See* Docs. 60 (Supplemental Affidavit of Sheila Renfro, attached) and 63 (Affidavit of Patrick Lynch and Affidavit of Janean Fritsch, attached). As noted above, those affidavits state that although one communication was returned to GLA, the second one mailed was not.[4] Nor was CBSI's initial communication to Plaintiff Campbell returned to it. Despite the fact that the supplemental affidavits were filed in direct response to the district court's instructions, Plaintiff Campbell seeks to have them rejected and not considered as evidence.

Plaintiff urges the court to accept that his action was brought in good faith, yet he is not willing to afford the same consideration to the affiants employed by the Defendants. One who seeks equity must act equitably, too. No doubt the affiants and the attorneys thought the initial affidavits to be complete. When the district court denied summary judgment because additional facts were needed, based on a relatively recent unpublished opinion from another district[5], the attorneys found out who had the additional information and provided it to the Court, again in the form of sworn affidavits.

Plaintiff Campbell avers that he would not have paid a $350.00 filing fee to pursue an action in bad faith, and the undersigned has no reason to doubt the truth of that

---

4. Even the statement from a postal clerk stating that mail to a closed box would have been forwarded up until June 3, 2006, at the latest, and after that would have been returned to sender, is not evidence that the sender received the returned mail. *See* Doc. 70, Exh. B.

5. *See Johnson v. Midland Credit Mgmnt. Inc.*, 2006 WL 2473004 (N.D.Ohio, Aug. 24, 2006)(cited, quoted, and discussed in Doc. 47, pp. 21–23).

statement. The affiants signed their affidavits under penalty of perjury, provided the information requested by the district court, and explained why the information was not included originally. Despite Plaintiff Campbell's characterization of the later affidavits as perpetrating a "fraud on the Court," he points to no inconsistency between the initial and later affidavits of Janean Fritsch. Rather, with no proof aside from his own suspicions, he accuses GLA and Fritsch of being "cunningly silent" in the initial affidavit so they could "create" an address to which they had purportedly sent the initial communication. Facts of record do not support Plaintiff Campbell's views and, just as the Court takes Plaintiff Campbell at his word, it takes the affiants at theirs as well.

Plaintiff Campbell has provided no proof to support his allegations and accusations; he has cited no authority to support his requested relief. Thus, his bare allegations and accusations cannot justify the actions he requests—impeachment, rejection, or exclusion—with respect to the later affidavits by employees of GLA and CBSI. The motion to exclude the later affidavits should be denied.

Thus, all competent evidence of record should be considered in deciding the Defendants' motions for summary judgment. *Document # 60: "Renewed Motion to Dismiss and/or for Summary Judgment of Defendant, Credit Bureau Systems, Inc." AND Document # 63: "Renewed Motion of GLA Collection Company, Inc. to Dismiss and/or [for] Summary Judgment"*

One stated purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Among the duties placed upon debt collectors by the FDCPA is notification of sever-al important pieces of information, which must be communicated to the debtor either in the initial communication from the debt collector to the debtor or within five days after the initial communication is sent. 15 U.S.C. § 1692g(a)(1)-(5). One such important piece of information is that the debtor has only thirty days to dispute the debt, request verification of it, and request the name and address of the original creditor. *Id.* § 1692g(a)(3)-(5). Courts have not required a debt collector to establish actual receipt of the initial communication by the debtor, however, merely that the communication was sent. *Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1201 (9th Cir.1999)(proof established that collection notice was sent, that debtors did not respond, and that the letter was not returned by the postal service); *see also Zamos II v. Asset Acceptance, LLC*, 423 F.Supp.2d 777, 785 (N.D.Ohio 2006); *Johnson*, 2006 WL 2473004, at *11–12 (quoting *Mahon* and making explicit the requirement that the initial communication not have been returned to the debt collector by the postal service as "undeliverable").

No genuine issue of fact remains as to any of the factual findings needed to bring Plaintiff Campbell's case within the rule of these cases: the statutorily required notices were sent, Plaintiff Campbell neither received nor responded to those notices, but the notices were not returned by the postal service to the debt collectors as undeliverable.[6] When the thirty-day statutory period granted to the debtor to reply to an initial communication passed, the Defendants could continue efforts to collect the debt without fear of violating the FDCPA. According to the print outs contained in the record, however, neither Defendant took any additional steps to collect

---

6. As noted above, CBSI's only letter to Plaintiff Campbell was not returned to it as undeliverable; GLA did have one letter returned, but it took reasonable steps to find an updated address, then sent a second letter, which was not returned as undeliverable.

the debt. Plaintiff Campbell swears that he never received any notice of the debts owed from either debt collector.[7]

■ In light of the lack of any subsequent collection efforts on the part of either Defendant, Plaintiff Campbell's allegations of violations of the FDCPA are somewhat difficult to discern. As he proceeds pro se in this action, however, the Court has carefully reviewed the pleadings for potential allegations of violations of the Act. At one point in his pleadings, he seems to indicate that his certified letters constituted initial communications that placed upon the Defendants a duty to respond to him within five days. The clear language of § 1692g(a), however, is that an initial communication is sent by the debt collector, not by the debtor. The notifications to be sent are in the possession of the collector, not the debtor, so any other reading would be nonsensical. And, when a court interprets the FDCPA, its starting place should be the "language of the statute itself." *Barany–Snyder v. Weiner,* 539 F.3d 327, 332–33 (6th Cir.2008)(quoting *Schroyer v. Frankel,* 197 F.3d 1170, 1174 (6th Cir.1999)). The statute clearly places the burden of sending an initial communication on the debt collector, not the debtor.

In most of the pleadings, Plaintiff Campbell alleges that both CBSI and GLA violated the FDCPA by responding to his requests for information, which he refers to as "cease and assist" letters. The name is actually apt, as such a letter does require the debt collector to do two things—cease collection efforts, at least temporarily, and assist the debtor in understanding the source and nature of the debt. *See* § 1692g(b). However, the debtor's letter must be timely, and Plaintiff Campbell's were not. Neither GLA nor CBSI was obligated to provide information or to

cease collection efforts upon receipt of the untimely certified letters from Plaintiff Campbell. Nonetheless, both acquired and sent to Plaintiff Campbell verification of the debts in the form of itemized bills. In short, the two Defendants here did precisely what Plaintiff Campbell asked them to do. A statute that gave a debtor the right to request information from a debt collector, but also punished the debt collector for providing that information, would benefit neither the debtor nor the collector and would make little logical sense. Contrary to Plaintiff Campbell's reading of it, § 1692g(b) requires the debt collector to cease collection efforts only "until the debt collector obtains verification of the debt ... and a copy of such verification ... is mailed to the consumer by the debt collector." Again, the clear language of the statute required these Defendants to communicate with Plaintiff Campbell, and the Court need not look beyond that clear language. *See Barany–Snyder,* 539 F.3d at 332–33.

Although reporting of a debt to a credit bureau may constitute a "collection activity" under the FDCPA in the Sixth Circuit, *see Purnell v. Arrow Financial Servs., LLC,* 303 Fed.Appx. 297, 303–04, 2008 WL 5235827, *6 n. 5 (6th Cir.2008), the only logical inference from the facts of record is that whoever made the report that served as Plaintiff Campbell's notice of the debts did so before he wrote his certified letters. Plaintiff Campbell's sworn declaration that he learned of the debts not from the initial communications sent him by the Defendants, but by checking his credit report, is uncontradicted. Which entity made that report is not relevant due to the timing of that probable "collection activity." *Id.* (reporting to a consumer reporting agency

7. The statement to the health professional that a debt collector was "worrying" him about a debt was not clearly related to either

GLA or CBSI and does not, therefore, contradict Plaintiff Campbell's sworn statement.

**after** receipt of, but **before** response to, a **timely** dispute under § 1692g might not be permissible)(emphasis added). Because the reporting activity had to take place prior to Plaintiff Campbell's untimely exercise of his rights under § 1692g(b), not in the narrow window after that exercise but before sending of the verification, even if reporting can violate the FDCPA, no violation took place here.

Plaintiff Campbell, despite consistent references to § 1692g, may have believed that he had notified the debt collectors to cease communicating with him under § 1692c. He did not. His certified letters cited the proper section, 1692g, and purported to exercise his rights under that specific section. Those letters did not notify the debt collectors that he was refusing to pay the debt or that he wished the debt collectors to cease further communication with him, so he did not limit the right of the debt collectors to communicate directly with him as is permitted by § 1692c(c). Rather, he demanded that the debt collectors provide information. Then, when they did, he sued them. Nothing in the FDCPA prohibits a debt collector from responding to a debtor's request for information.

Finally, the responses of Defendants GLA and CBSI to Plaintiff Campbell's untimely requests for information should not be considered initial communications required to contain the notifications or to trigger the five-day notification period. Such a disincentive to debt collectors to cooperate with and provide information to debtors would not serve the purposes of the FDCPA. When a debt collector has no notice that the initial communication was not received by the debtor, and receives a letter from the debtor attempting to exercise, far outside the statutory period of time granted for such an exercise, the rights described in the initial communication to that debtor, the debt collector is not obligated to respond to the untimely attempt, see § 1692g(b), and would be justified in assuming that the debtor had received the initial communication. The choice made by both Defendants here to provide the requested information should be applauded, not penalized.

In short, nothing that either GLA or CBSI did in regards to the accounts referred to them for collection constituted a violation of the FDCPA. The only arguable mistake either debt collector made was GLA's sending of a reminder notice after receiving the certified letter but before sending the requested verification or name and address of the original creditor. The reminder notice did show the name, but not the address, of the original creditor. However, as Plaintiff Campbell's request was not timely under § 1692g(b), even the sending of the reminder notice did not violate the FDCPA. As neither debt collector violated the FDCPA in any respect, no analysis of the bona fide error defense contained in 15 U.S.C. § 1692k(c) is necessary. *See also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 538 F.3d 469, 472–73 (6th Cir.2008)(holding that the defense does apply to mistakes of law).

*Defendants' Renewed Requests for Fees*

■ In the memoranda filed in support of their original motions for dismissal or summary judgment, both Defendants requested fees pursuant to 15 U.S.C. § 1692k(a)(3). Docs. 26 and 41. Although neither specifically argues that point in the current motion, both incorporate by reference all previous arguments. The request for fees merits some attention, therefore. First, to put the statute in its proper and complete context, this section defines the extent of civil liability under the FDCPA:

(a) **Amount of damages.** Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title [15 U.S.C.

§ 1692 et seq.] with respect to any person is liable to such person in the amount equal to the sum of—

(1) any actual damage . . . ;

(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000;

* * * and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

*Id.* The final sentence of (a)(3) is the statutory authority upon which Defendants base their request. However, despite noting that Plaintiff Campbell's claims were without merit, neither Defendant made any effort to define "bad faith" in this context or to make a showing of Plaintiff Campbell's motive for harassment of either Defendant. In contrast, Plaintiff Campbell quite persuasively argued that as a federal inmate with limited funds, he would have little incentive to pay several hundred dollars to litigate a claim in bad faith or to harass a debt collector with which he had little previous contact.

This Court's review of the entire record reveals that Plaintiff Campbell feels that he has been wronged.[8] He filed and prosecuted a law suit in an effort to rectify that wrong. Even though he was incorrect about liability under the FDCPA, no finding of bad faith or harassment should be made in this matter. *See e.g., Deere v. Javitch, Block & Rathbone, LLP,* 413

F.Supp.2d 886, 888 (S.D.Ohio 2006)(no bad faith where attorneys filed a complaint containing claims similar to ones rejected by two previous district courts; no harassment apparent in filing fifteen cases, many against this same defendant). Just because a defendant "disagrees with Plaintiff's theory of FDCPA liability" in a case is no basis for a court to conclude that the plaintiff acted in bad faith or with a "nefarious motive." *Id.* at 889.

*Recommended Conclusions of Law*

1. The evidence contained in the supplemental affidavits filed by employees of both Defendants is admissible and should be considered in deciding the summary judgment motions.

2. Because material outside the pleadings has been submitted and is being considered, the motions by the Defendants cannot be granted unless they meet the standard of Rule 56(c): no genuine issue of material fact can remain for resolution by a trier of fact, and the moving parties must be entitled to judgment as a matter of law.

3. No genuine issue of material fact remains for resolution by a trier of fact on Plaintiff's claims under the FDCPA, and the Court should find the facts to be as set out earlier in this report and recommendation.

4. As a general business practice, both Defendants included all information required by 15 U.S.C. § 1692g(a)(1)-(5) in the initial communication sent to the debtor.

5. Plaintiff Campbell's certified letters to the Defendants, notifying them that he disputed the debt and requesting validation, were not timely under 15 U.S.C. § 1692g(b); therefore, those letters did

---

**8.** The underlying basis for this belief appears to be that Plaintiff Campbell does not feel that he should be responsible for medical bills incurred when he was a federal pretrial detainee.

not entitle him to the protection provided by § 1692g(b).

6. Even if Plaintiff Campbell's certified letter to it had been timely, no action taken by CBSI subsequent to its receipt of the letter violated § 1692g(b), as all CBSI's communications subsequent to receipt of the certified letter were to the creditor or to Plaintiff Campbell himself and sought or provided the information he requested in the certified letter.

7. Because Plaintiff Campbell's certified letter to it was not timely, the reminder notice sent by GLA on February 29 did not constitute even a technical violation of § 1692g(b), even though it was mailed before the verification letter and it contained only the name of the original creditor, not the address; all GLA's other communications subsequent to receipt of the certified letter were to the creditor or to Plaintiff Campbell himself and sought or provided the information he requested in the certified letter.

8. Where, as happened here, the debtor learns of the debt collector's existence from a source other than the initial communication, which was sent by the debt collector and not returned as "undeliverable," contacts the debt collector beyond the statutory thirty-day period, disputes the debt, and requests verification of the debt, if the debt collector chooses to respond, despite not being required by statute to do so, the debt collector need not include in its response the notices required by 15 U.S.C. § 1692g(a).

9. The certified letters from Plaintiff Campbell to both Defendants do not qualify as "initial communications" triggering a duty on the part of the debt collectors, the Defendants, to respond within five days; the "initial communication" contemplated by the statute is from the debt collector to the debtor.

10. The reporting of Plaintiff Campbell's debts to a consumer reporting agency did not violate the FDCPA because it did not take place at a time when either Defendant was prevented by any section or subsection of the FDCPA from engaging in collection activities.

11. As neither Defendant violated the FDCPA by any action or inaction, both Defendants are entitled to judgment as a matter of law.

12. Defendants made no showing of "bad faith" on Plaintiff Campbell's part or any "purpose of harassment," beyond his pursuit of a lawsuit that is ultimately unsuccessful.

*Conclusion*

In light of the recommended findings of fact and conclusions of law above, IT IS RECOMMENDED THAT:

1. Plaintiff's "Motion for Court to Take Judicial Notice of 'Motion for Impeachment with a Prior Inconsistent Statement' and to Reject as Being Introduced as Evidence" [Doc. 71] should be DENIED;

2. Defendant Credit Bureau Systems, Inc.'s "Renewed Motion to Dismiss and/or for Summary Judgment of Defendant, Credit Bureau Systems, Inc." [Doc. 60] should be GRANTED and judgment entered in favor of this Defendant as to all remaining claims against it in Plaintiff's Complaint; and

3. Defendant GLA Collection Company, Inc.'s "Renewed Motion of GLA Collection Company, Inc. to Dismiss and/or [for] Summary Judgment" [Doc. 63] should be GRANTED and judgment entered in favor of this Defendant as to all remaining claims against it in Plaintiff's Complaint.

Particularized objections to this Report and Recommendation must be filed within ten days of the date of service or further appeal is waived. *Thomas v. Arn,* 728 F.2d 813 (6th Cir.1984), *aff'd,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may file a response to another party's objections within ten days after being

served with a copy of those objections.    July 14, 2009.
Fed.R.Civ.P. 72(b).

## APPENDIX A
### Timeline of Events and Correspondence

| *GLA Information* | CBSI Information | **Campbell Information** | Other Record Source |
|---|---|---|---|
| 06/19/05 | | **Suffers knee injury while a pretrial detainee housed in Carter County Detention Center, Grayson, KY** | |
| 09/12/05 | Freddy S. Campbell treated at King's Daughters' Medical Center | | |
| ? | | **While still at Carter County, Campbell received bill and told King's Daughters' Medical Center to send bills to the United States Marshal at 300 Virginia Street, Charleston, WV 25301** | |
| 11/30/05 | 300 Virginia Street address shows as a bad address; shows prior addresses as 969 POB Saint Albans, WV 25177 and 354 POB Dunbar, WV 25064 | | |
| 12/12/05 | Has address as 13 Cross Bar Road, Grayson, KY 41143 | | |
| 01/12/06 | Initial communication to Campbell sent to 13 Cross Bar Road address | | |
| 01/12/06 | | | Campbell moved to temporary housing in Oklahoma City. |
| 01/24/06 | | | Campbell moved from Oklahoma City to FCI Elkton. |
| 02/28/06 | Sent letter 2 to 300 Virginia St. East 4th, Charleston WV 25301 | | |
| 03/31/06 | Sent letter 3 (presumably to the WV address) | | |
| 06/22/06 | | | Campbell moved to FMC Lexington. |
| 09/21/06 | "RCVD CNSMR DSPUTE–VRFD AS RPRTD" [received consumer disputeverified as reported] | | |
| 02/02/07 | "RCVD CONSUMER DISPUTE VERIFIED AS REPROTED [sic]" | | |
| *03/07* | | | *Account referred for collection by King's Daughters' Medical Center, listing address as 300 Virginia Street, # 4, Charlestown [sic], WV 25301.* |
| *03/16/07* | | | *Initial communication sent to that address* |
| *03/28/07* | | | *Initial communication returned to GLA* |
| *05/07/07* | | | *Accurint provides updated address of P.O. Box 969, St. Albans WV 25177* |
| *05/08/07* | | | *Identical letter sent to this new address* |
| 10/07/07 | | **Campbell has surgery on the injured knee.** | |
| 02/19/08 | | **Campbell sends certified letters to both GLA and CBSI (no copy provided) disputing the debt and asking for validation and the name and address of the original creditor.** | |
| 02/21/08 | | **Plaintiff Campbell asks to talk to someone about loss of appetite and weight, nightmares, and intrusive thoughts of excruciating pain he suffered.   Statement says, "Now a collection agency is worrying me for that debt."** | |
| *02/25/08* | | | *GLA receives letter dated 2/19/08 from Campbell disputing debt and requesting validation* |
| 02/25/08 | "I RCVD CERT LETTER DISP ONE OPEN ACCOUNT, I HAVE CODED DISP AND FWD TO LEX" | | |
| 02/28/08 | "MARKED ACCT AS DISP" [marked account as disputed] | | |
| *02/29/08* | | | *GLA sends reminder to Campbell at correct address.* |
| 03/03/08 | | **Campbell received "reminder notice" from GLA** | |
| *03/19/08* | | | *GLA sends validation* |
| 03/22/08 | | **Campbell received itemization from GLA (no copy provided)** | |
| 04/03/08 | "SENT VARI. OF DEBT" [sent verification of debt] | | |
| 04/03/08 | | **Campbell received a statement from CBSI (no copy provided)** | |
| 04/11/08 | | **Plaintiff Campbell files complaint.** | |
| *04/16/08* | | | *GLA sends validation in form of itemization of account showing creditor, date of medical treatment, and copy of original bill* |

## OPINION & ORDER

This matter is currently before the Court upon the motion of the plaintiff, Freddy S. Campbell, to alter or amend the Court's Opinion & Order of September 9, 2009 granting the defendants' motion to dismiss and/or for summary judgment [DE # 88]. Specifically, Campbell argues that the Court erred in determining that defendants GLA Collection Company, Inc. and Credit Bureau Systems, Inc. complied with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* with respect to his disputed accounts.

■ To grant a motion to alter or amend filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, there must be "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir.2006). Campbell argues that dismissing his claims has resulted in manifest injustice. However, for the reasons set forth in the Court's Opinion & Order of September 9, 2009, Campbell is not entitled under the law to the relief he seeks. Accordingly, no manifest injustice results and Campbell's motion to alter or amend will be denied.

The Court, being fully and sufficiently advised, hereby **ORDERS** that Campbell's motion to alter or amend [DE # 88] is **DENIED.**