**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0670n.06

**Case No. 20-3271**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| ALYSSA PORTNOY and DARLENE PORTNOY, | ) ) ) | **FILED**<br>Nov 23, 2020<br>DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| NATIONAL CREDIT SYSTEMS, INC. and WILLIAMSBURG OF CINCINNATI, OHIO, | ) ) ) | |
| Defendants-Appellees, | ) ) | |
| | ) | O P I N I O N |
| DAVID D. DONNETT, | ) ) | |
| Third Party Defendant-Appellee. | ) | |

**BEFORE: CLAY, GIBBONS, and NALBANDIAN, Circuit Judges.**

**CLAY, Circuit Judge.** Plaintiffs Alyssa Portnoy and Darlene Portnoy appeal the district court's grant of summary judgment to Defendants National Credit Systems, Inc. ("NCS"), Williamsburg of Cincinnati, Ohio, and David D. Donnett on their claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e, 1692f; Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code §§ 1345.02 and .03; Ohio Rev. Code § 5321.16; Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961–68; and Ohio Corrupt Practices Act ("OCPA"), Ohio Rev. Code §§ 2923.32(A)(1), 2923.31(C), (E), and I(2). On appeal,

Plaintiffs contend that the district court misinterpreted the lease. For the reasons set forth below, we **AFFIRM IN PART and REVERSE IN PART** the judgment of the district court.

## BACKGROUND

On August 10, 2016, Plaintiffs Alyssa Portnoy and Darlene Portnoy entered into a one-year residential lease with Williamsburg for an apartment, in which Alyssa Portnoy resided and for which Darlene Portnoy acted as co-signor. The initial term of the lease was from August 20, 2016, to August 19, 2017, but the lease was set to "automatically renew month-to-month unless either party g[ave] at least 60 days written notice of termination or intent to move-out." (R. 30-1, Apartment Lease Contract § 3 at PageID # 223.) Rent was $615.00 per month, payable on or before the first of each month. Any rent increase or lease contract change was required to be provided by Williamsburg at least 30 days before the 60-day notice date. A move out notice would not release Plaintiffs "from liability for the full term of the Lease Contract or renewal term." (*Id.* § 37 at PageID # 227.)

Upon move-out, Plaintiffs were liable for a number of charges, including "unpaid rent; unpaid utilities; unreimbursed service charges; [and] repairs or damages," which Williamsburg could deduct from the security deposit. (*Id.* § 41 at PageID # 228.) Plaintiffs also signed a "Utility and Services Addendum" to the lease, providing that they would "be charged for the full period of time that [they] were living in, occupying or responsible for payment of rent or utility charges on the dwelling." (R. 1-2, Utility and Services Addendum at PageID # 29.) And in the event of breach, they would "be responsible for utility charges for the time period [they] were obligated to pay the charges under the Lease, subject to our mitigation or damages." (*Id.*)

On May 22, 2017, Williamsburg provided Plaintiffs notice that the month-to-month rent for the unit would be $898.00 per month. On July 27, 2017, Plaintiffs provided Williamsburg with

notice of intent to move out, listing "Attending NKU [Northern Kentucky University]" under "Reasons for Moving." (R. 2-3, Resident's Notice of Intent to Move Out at PageID # 100.) Plaintiffs agree that they did not provide 60 days' notice of intent to move out, and, in fact, they provided just 23 days' notice.

On August 24, 2017, Williamsburg sent Plaintiffs a notice regarding a balance in the amount of $937.52 and sought payment of that balance. Williamsburg attached a copy of Plaintiffs' "Final Account Statement." (R. 2-3, Letter to Alyssa Portnoy & Darlene Portnoy at PageID # 101.) According to Williamsburg, and as shown on the "Final Account Statement," titled "Move Out Statement," Plaintiffs owed Williamsburg $1071.81 for "insufficient notice (37 days of 60 days noticed left. Charge remaining days at a [month-to-month] rate of $898.00)." (*Id.* at PageID # 102.) This amount was calculated by dividing $898.00 by 31 (the number of days in August)[1] to come up with a daily rental rate, and then multiplying that daily rate by 37 days. Williamsburg added to the rent amount $63.76 in utilities and a $1.95 move out fee and then deducted Plaintiffs' $200.00 security deposit towards the amount to come to $937.52. After Plaintiffs refused to pay the amount due, Williamsburg subsequently retained NCS to collect the debt.

On November 9, 2017, Plaintiffs filed a proposed class action complaint in Ohio state court. They alleged that, in seeking to recover the alleged balance, Williamsburg and NCS committed the following violations of law: (1) NCS and Williamsburg attempted to collect a debt that was not expressly authorized by the agreement creating the debt and/or misrepresented the character, amount or legal status of the debt, in violation of the Fair Debt Collection Practices Act (15 U.S.C. §§ 1692e, 1692f); (2) NCS and Williamsburg committed an unconscionable act or practice in

---

[1] Williamsburg's brief states that the month used for the calculation was July, but this is inconsistent with the deposition testimony of the property manager, Brittany Carpenter.

connection with a consumer practice, in violation of the Ohio Consumer Sales Practices Act (Ohio Rev. Code §§ 1345.02 and .03); (3) NCS and Williamsburg engaged in a pattern of corrupt activity by using the mail to send collection letters to Plaintiffs seeking payment of what they term "notice fees," in violation of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961–68) and the Ohio Corrupt Practices Act (Ohio Rev. Code §§ 2923.32(A)(1), 2923.31(C), (E), and I(2)); and (4) NCS and Williamsburg failed to return Plaintiffs' security deposit, in violation of Ohio Rev. Code § 5321.16. Plaintiffs later pleaded the same claims against Donnett.[2]

On December 13, 2017, NCS removed the case to the United States District Court for the Southern District of Ohio on the basis of federal question jurisdiction. Williamsburg filed a counterclaim on December 28, 2017, seeking the $932.57 allegedly due to Williamsburg. Soon after, Plaintiffs' moved for summary judgment on the basis that the lease did not allow Williamsburg to collect any money for defective notice of intent to move. The district court denied the motion. *Portnoy v. Nat'l Credit Sys., Inc.*, No. 1:17-CV-834, 2019 WL 1440023, at *2–3 (S.D. Ohio Mar. 31, 2019) ("At this time, Plaintiffs' conclusory arguments are not instructive, the record provides no basis from which this Court could grant Plaintiffs' Motion, and they fail to meet their burden.").

Defendants filed their motions for summary judgment on April 30, 2019. The district court granted Defendants' motions for summary judgment in part, on the basis that the lease provides for collection of the balance asserted by Defendants and, accordingly, (1) Plaintiffs cannot establish that they do not owe a debt under the lease and (2) Williamsburg properly applied Plaintiffs' security deposit to the debt owed. *Portnoy v. Nat'l Credit Sys., Inc.*, No. 1:17-CV-834,

---

[2] Donnett is Williamsburg's attorney.

2020 WL 605920, at *3 (S.D. Ohio Feb. 7, 2020). The district court denied NCS's request for attorneys' fees and costs. *Id.* Plaintiffs filed a notice of appeal on March 3, 2020.

## DISCUSSION

### Standard of Review

This Court reviews the district court's grant of summary judgment de novo. *King v. United States*, 917 F.3d 409, 421 (6th Cir. 2019) (citing *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc)). A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016) (quoting *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 551 (6th Cir. 2002), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

The burden of demonstrating the absence of a genuine dispute of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the burden then shifts to the nonmoving party to establish a "genuine issue for trial" via "specific facts." *Id.* at 324. Additionally, the moving party is entitled to summary judgment when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

When evaluating a motion for summary judgment, this Court must "view[] [the evidence] in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). This includes drawing "all justifiable inferences" in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Jackson*, 814 F.3d at 775 (quoting *Anderson*, 477 U.S. at 249).

## Analysis

I. **Plaintiffs' Failure to Comply with the Federal Rules of Appellate Procedure and the Sixth Circuit Rules**

Before disputing the merits of the appeal, NCS and Williamsburg argue that the district court order should be affirmed because Plaintiffs have "forfeited the arguments in their [b]rief" by failing to comply with the Federal Rules of Appellate Procedure and Sixth Circuit rules. (NCS & Williamsburg Br. at 20–21.) Defendants are correct that Plaintiffs failed to comply with these rules. Plaintiffs did not include citations to the record in the statement of facts and argument sections of their opening brief, as required by Federal Rules of Appellate Procedure 28(a)(6) and 28(a)(8),[3] only citing to the record in the section entitled "Appellants' Statement of the Case," which concerned the procedural history of the litigation. (Appellants Br. at 7–10.) Plaintiffs also failed to provide the standard of review in their briefs as required by Federal Rule of Appellate Procedure 28(a)(8)(B). And Plaintiffs incorporated by reference paragraphs 33 to 41 of their complaint, in violation of Sixth Circuit rules. *Northland Ins. v. Co. v. Stewart Title Guar. Co*, 327 F.3d 448, 452

---

[3] Federal Rule of Appellate Procedure 28(a) provides that an appellant must include "a concise statement of the case setting out the facts relevant to the issues submitted for review, describing the relevant procedural history, and identifying the rulings presented for review, with appropriate references to the record." Fed. R. App. P. 28(a)(6). An appellant's brief must also contain an "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies" as well as the applicable standard of review for each issue raised in the brief. Fed. R. App. P. 28(a)(8). We have previously held that "[a] party has an obligation to direct [this Court] to parts of the record that support her contentions." *Cline v. Dart Transit Co.*, 804 F. App'x 307, 312 n.6 (6th Cir. 2020).

(6th Cir. 2003) (noting that a party may not incorporate by reference "arguments made at various stages of the proceeding in the district court").

Despite their failure to strictly comply with the rules, Plaintiffs have not waived their sole argument on appeal, which is that the district court incorrectly interpreted the lease agreement between Plaintiffs and Williamsburg. Plaintiffs properly identified this legal issue, provided legal argument as to why the district court misinterpreted the lease, and cited caselaw to support their contract interpretation. Plaintiffs also state that "[n]o material fact in dispute exists that the relevant lease fails to state Defendants can collect a certain amount of money from Appellants." (Appellants Br. at 15.) Since there are no facts at issue, the lack of citation to the record is unhelpful, but not fatal. *Cf. Nat'l Credit Union Admin. Bd. v. Zovko*, 728 F. App'x 567, 568 (6th Cir. 2018) ("Here, Appellants do not offer even a single legal citation, and certainly no legal argument. Therefore, this argument is waived."); *Magnum Towing & Recovery v. City of Toledo*, 287 Fed. App'x 442, 449 (6th Cir. 2008) (concluding that the plaintiffs could not survive summary judgment when they failed to cite any evidence in the record to support their claim). Accordingly, Plaintiffs have not forfeited the arguments in their briefs.

## II.     Interpretation of the Lease

Plaintiffs' sole issue on appeal is that the district court erred in finding that the lease authorized Defendants to collect the amount of money claimed to be owed "either by an alleged 'notice fee' or on a month-to-month lease basis as a result of an allegedly defectively written notice of intent to leave." (Appellants Br. at 15.) Defendants contend that the district court correctly determined that the lease unambiguously permitted charging Plaintiffs the amount due under the lease based on the pro-rated month-to-month rent for the remaining 37 days in the 60-day notice period. In the present case, the lease does not support either interpretation of the lease; rather, it

only allowed Defendants to recover what remained on the lease term or month-to-month renewal period, not the notice period. The lease provided that, at the end of the year term, it would "automatically renew month-to-month unless either party gives at least 60 days written notice of termination or intent to move-out." (R. 30-1, Apartment Lease Contract § 3 at PageID # 223.) Additionally, Plaintiffs' "move-out notice [would] not release [them] from liability for the full term of the Lease Contract or renewal term." (*Id.* § 37 at PageID # 227.) Accordingly, Plaintiffs were liable for rent from August 20, 2017, the day after they moved out, through the end of the lease term or last renewal period.

With this unambiguous meaning of the lease, the district court should have determined when the lease renewal period ended in order to calculate the amount owed by Plaintiffs. Based on their interpretation of the lease, Defendants' implicit argument is that the lease term lasted until the lapse of sixty days from the date of notice, but this is not consistent with Ohio law. Under Ohio landlord-tenant law, month-to-month tenancies are terminable upon at least thirty-days' notice prior to the periodic rental date. Ohio Rev. Code § 5321.17(B). Terms inconsistent with landlord-tenant law may not be included in the lease, *see id.* § 5321.06, including a term that fails to specify that at least thirty-days' notice must be before the periodic rental date. *Cary v. Galbraith*, No. L-94-002, 1994 WL 476146, at *2 (Ohio Ct. App. 1994) (rendering unenforceable the termination provision of a lease when it provided for thirty-days' notice of termination without specifying that notice was required to be before the next periodic rental date). Because the provision required sixty days' notice to terminate the month-to-month lease without reference to the periodic rental date, it conflicted with the language of Ohio Rev. Code § 5321.17(B) allowing tenants to terminate a month-to-month lease upon at least thirty days' notice from the periodic rental date. As a result, the provision is unenforceable.

When a lease provision about termination is unenforceable, the statute concerning month-to-month tenancies governs termination of such a tenancy, which means that Plaintiffs needed to give notice to terminate the lease at least 30 days before the next periodic rental date. *See Cary*, 1994 WL 476146, at *2; *Bowman v. Cmty. Mgmt. Corp.*, 469 N.E.2d 1038, 1040 (Ohio Ct. App. 1984). Plaintiffs gave their notice of termination on July 27, 2017, which was 23 days before August 20, 2017, when the lease renewed on a month-to-month basis, but more than 30 days before the next periodic rental date on September 20, 2017. Therefore, they effectively ended the tenancy on September 19, 2017, and are only responsible for rent through that date. Given that Williamsburg notified Plaintiffs that the rent for the month-to-month lease would be $898, Plaintiffs agreed to a $1.95 move out charge and a monthly rate of $63.76 for utilities, and Williamsburg retained the $200 security deposit, Plaintiffs owed Williamsburg $763.71 when the periodic rental term ended.[4]

### III. Portnoys' FDCPA Claims Against Williamsburg and Donnett

In their briefs, Williamsburg and Donnett both argue that they cannot be held liable under the FDCPA because, as an original creditor, Williamsburg—and Donnett as the company's attorney—is not a "debt collector."[5] Plaintiffs, in neither their opening brief nor their reply brief,

---

[4] Williamsburg and NCS did not violate Ohio Rev. Code § 5321.16 by failing to return the security deposit. This provision provides that "[u]pon termination of the rental agreement any property or money held by the landlord as a security deposit may be applied to the payment of past due rent" and "[a]ny deduction from the security deposit shall be itemized and identified by the landlord in a written notice delivered to the tenant together with the amount due, within thirty days after termination of the rental agreement and delivery of possession." Ohio Rev. Code § 5321.16. Because Plaintiffs owed rent for the monthly term beginning August 20, 2017, and Williamsburg provided an itemized notice with the amount due within 30 days after the lease was terminated, Williamsburg properly retained the deposit to offset the balance owed.)
[5] Donnett does not explicitly make this argument in the brief, but he relatedly contends that Williamsburg is a direct creditor of Plaintiffs and that since he is an attorney and filed a compulsory counterclaim against Plaintiffs on behalf of Williamsburg, he cannot be held liable under the FDCPA.

explain why Williamsburg is a "debt collector" under the FDCPA, and, as to Donnett, they simply argue that the Supreme Court has concluded that attorneys may be held liable under the FDCPA.

Under the FDCPA, only a "debt collector" may be held liable. *See* 15 U.S.C. §§ 1692e, 1692f. A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). This excludes original creditors who use their own names to collect on their own debts or retain others to do so. *Id.* § 1692a(6)(A), (F); *see also Montgomery v. Huntington Bank*, 346 F.3d 693, 698–99 (6th Cir. 2003) (concluding that a bank which originated a car loan was not "a 'debt collector' subject to liability under the FDCPA"). However, an attorney may qualify as a debt collector if they "regularly engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) (internal quotation marks omitted). An attorney regularly collects debts when he "collects debts as a matter of course for [their] clients or for some clients, or collects debts as a substantial, but not principal, part of [their] general law practice." *Schroyer v. Frankel*, 197 F.3d 1170, 1176 (6th Cir. 1999).

Because Williamsburg is an original creditor—the entity to which Plaintiffs originally owed the debt—it cannot be liable under the FDCPA. Donnett could be liable, but, during summary judgment briefing, Plaintiffs raised no genuine issue of material fact as to whether he engaged in consumer-debt-collection activity. Accordingly, the district court's grant of summary judgment for Williamsburg and Donnett on the FDCPA claims is affirmed on this ground.

## IV.    Portnoys' OCSPA Claims Against Williamsburg, Donnett, and NCS

As for the OCSPA claims, Williamsburg and Donnett argue that they cannot be held liable under the statute because the consumer transaction at issue is a residential lease, which is exempt

from liability thereunder. Plaintiffs contend that the rule excluding residential leases from liability under the OCSPA is inapplicable because Plaintiffs have claimed a violation of the OCSPA in connection with "an illegal debt that has not been specifically authorized by the written lease agreement." (Reply Br. at 5.)

The OCSPA provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." Ohio Rev. Code § 1345.02(A). Under the statute, a supplier is "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." Ohio Rev. Code § 1345.01(C). We have held that debt collectors and attorneys involved in debt collection may be suppliers liable under the OCSPA depending on "the regularity with which the attorney engages in the type of transaction attacked by the plaintiff." *Schroyer*, 197 F.3d at 1177. The statute then defines a consumer transaction as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." *Id.* § 1345.01(A). While not explicitly excluded from this definition, the Ohio Supreme Court has held that residential leases are not consumer transactions under the OCSPA. *Heritage Hills, Ltd. v. Deacon*, 551 N.E.2d 125, 128 (Ohio 1990).

Whether or not Plaintiffs are complaining about Williamsburg and Donnett's debt collection conduct, because the underlying transaction at issue is a residential lease, Williamsburg and Donnett cannot be held liable under the OCSPA. *See id.* at 128 (concluding that a lessee could not bring a claim under the OCSPA to prevent the landlord from ascribing all unexplained damages to an apartment). Even if Donnett could not rely on the same reasoning, Plaintiffs have not demonstrated that he is a "supplier" under the OCSPA for the same reason they did not make the

requisite showing under the FDCPA—they have made no showing that he regularly engaged in consumer-debt collection activity.

While NCS did not raise this argument as to the OCSPA claim against it before the district court, the record below also supports dismissing the OCSPA claim as to NCS. As was the case with Williamsburg and Donnett, even if NCS is considered a supplier for purposes of the statute, NCS cannot be held liable because the underlying transaction was a residential lease. Generally, courts will not address arguments that a party raises for the first time on appeal. *Frazier v. Jenkins*, 770 F.3d 485, 497 (6th Cir. 2014). But this Court has also recognized that this rule "is not jurisdictional and may be waived in exceptional cases or to avoid a miscarriage of justice." *Mayhew v. Allsup*, 166 F.3d 821, 823 (6th Cir. 1999). And "this [C]ourt can affirm the district court on any basis supported by the record." *Leary v. Daeschner*, 228 F.3d 729, 741 n.7 (6th Cir. 2000). It is true that NCS has no excuse to justify its failure to raise this argument below. But given that NCS is similarly situated to Williamsburg and Donnett, we affirm the district court's grant of summary judgment on the OCSPA claims as to all three Defendants.

**V.      Portnoys' OCPA and RICO Claims Against Williamsburg, Donnett, and NCS**

Defendants argue that they cannot be held liable for OCPA and RICO violations because Plaintiffs provided no evidence in support of those violations in response to the motions for summary judgment on these claims. Plaintiffs include no argument as to why Defendants are liable under the state and federal RICO statutes beyond their contentions about the meaning of the lease and the alleged wrongful retention of Plaintiffs' security deposit.

The OCPA is modeled on the federal RICO statute. In order to prove a claim under this statute, a plaintiff must show the following: (1) the "conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses;" (2) "the

prohibited criminal conduct of the defendant constitutes a pattern;" and (3) the "defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise." *Morrow v. Reminger & Reminger Co., L.P.A.*, 915 N.E.2d 696, 708 (Ohio Ct. App. 2009) (quoting *Patton v. Wilson*, No. 82079, 2003 WL 21473566, 2003-Ohio-3379, at ¶ 12 (Ohio Ct. App. 2003)). Similarly, to prove a federal RICO claim, a plaintiff must prove "the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791 (6th Cir. 2012) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006)).

Plaintiffs countered Defendants' summary judgment motions without presenting any genuine issue of material fact as to why summary judgment on these claims could not be granted. Rather, they argued in a conclusory fashion that because, under Plaintiffs' interpretation of the lease no additional rent was owed, Defendants had violated the statutes. Accordingly, summary judgment on these claims was properly granted.

## VI. Williamsburg and NCS's Request for Leave to File a Motion for Attorneys' Fees and Costs

Williamsburg and NCS both seek leave to file a motion for attorneys' fees and costs due to "the Portnoys' dogged pursuit of claims they did not even attempt to properly support with admissible evidence." (NCS & Williamsburg Br. at 35.) Defendants have not preserved this issue for appeal. Defendant Williamsburg did not request attorneys' fees and costs under 28 U.S.C. § 1927 during the district court proceeding.[6] Defendant NCS, on the other hand, did request that attorneys' fees and costs be awarded, which the district court rejected. *See Portnoy*, 2020 WL

---

[6] 28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

605920, at *3. But Defendant NCS did not file a cross-appeal. "[T]he filing of a notice of cross-appeal is jurisdictional where an appellee wishes to attack part of a final judgment in order to enlarge his rights or to reduce those of his adversary." *Young v. Sabbatine*, 238 F.3d 426, *2 n.2 (6th Cir. 2000) (quoting *Francis v. Clark Equip. Co.*, 993 F.2d 545, 552 (6th Cir. 1993)). Because neither party properly preserved the issue for appeal, we deny leave for NCS and Williamsburg to file a motion for attorneys' and costs.

## CONCLUSION

Because Plaintiffs are correct that the claimed debt was not expressly authorized by the lease, we **REVERSE** the district court's decision as to the FDCPA claim against NCS. But because Plaintiffs owe rent for the month term beginning on August 20, 2017, we **REMAND** the contractual dispute claim as to the money owed to Williamsburg for entry of judgment in favor of Williamsburg consistent with this opinion and **AFFIRM** the dismissal of the claim against NCS and Williamsburg under Ohio Rev. Code § 5321.16. Further, because Williamsburg and Donnett are not debt collectors under the FDCPA, a residential lease is not a commercial transaction under the OCSPA, and Plaintiffs failed to meet their burden of proof as to the OCPA and RICO claims, we **AFFIRM** the district court's decision on those grounds to (1) dismiss the FDCPA claims against Williamsburg and Donnett, (2) dismiss the OCSPA claims against Williamsburg, Donnett, and NCS, and (3) dismiss the OCPA and RICO claims against Williamsburg, Donnett, and NCS. We **DENY** the request by Williamsburg and NCS for leave to file a motion for attorneys' fees and costs.

For the reasons stated above, the judgment of the district court is **AFFIRMED IN PART** and **REVERSED IN PART**, and we **REMAND** the case to the district court for proceedings not inconsistent with this opinion.